*Alejandro Toledo Manrique*

*v.*

*Donald O'Keefe*

# EXHIBIT D

MARÍA DEL CARMEN PIZARRO SABOGAL
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3191

**MINISTERIO PÚBLICO**
**[GOVERNMENT ATTORNEY GENERAL'S OFFICE]**

**FISCALÍA DE LA NACIÓN**
**[OFFICE OF THE ATTORNEY GENERAL]**

**FISCALÍA SUPRAPROVINCIAL CORPORATIVA ESPECIALIZADA EN
DELITOS DE CORRUPCIÓN DE FUNCIONARIOS – EQUIPO ESPECIAL
[CORPORATE SUPRA-DISTRICT ATTORNEY'S OFFICE SPECIALIZED
IN CORRUPTION OF GOVERNMENT OFFICIALS – SPECIAL TEAM**

**CASE SGF 506015504-2017-02-0**

**Court Docket 16-2017**

## DECISION TO EXTEND FORMALIZATION AND CONTINUATION OF PRELIMINARY INVESTIGATION

### DECISION No. 06

Lima, February 03, 2017

I.   **HAVING REVIEWED** the records of the preliminary investigation into:

* **Jorge Luis CUBA HIDALGO** as **PERPETRATOR** of the crime against public administration – **INFLUENCE PEDDLING,** and the crime of **MONEY LAUNDERING,** both to the detriment of the **PERUVIAN STATE.**

* **Edwin Martín LUYO BARRIENTOS,** as **PERPETRATOR** of the crime against public administration – **PASSIVE BRIBERY** [SOLICITATION AND ACCEPTANCE OF BRIBES], and the crime of **MONEY LAUNDERING,** both to the detriment of the **PERUVIAN STATE.**

* **Miguel Ángel NAVARRO PORTUGAL** as PERPETRATOR of the crime of **MONEY LAUNDERING,** to the detriment of the **PERUVIAN STATE.**

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net     web: www.lexitrans.net

María del Carmen Pizarro Sabogal
CTP N° 0051

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3192

- **Jessica Carola TEJADA GUZMAN,** as **PERPETRATOR** of the crime of **MONEY LAUNDERING,** to the detriment of the **PERUVIAN STATE.**

- **Mariella Janette HUERTA MINAYA,** as **PERPETRATOR** of the crime against public administration – **PASSIVE BRIBERY** [SOLICITATION AND ACCEPTANCE OF BRIBES] as defined in **the Criminal Code, first paragraph, article 393,** and of the crime of **MONEY LAUNDERING,** both to the detriment of the **PERUVIAN STATE.**

## II. RECITALS

1. This Prosecutor's office signed a preliminary agreement with representatives of the company Constructora Norberto Odebrecht S.A. Sucursal Perú, whereby they committed to collaborate with the investigation and facilitate information and/or deliver documents required by the Government Attorney General's Office for clarification of the facts.

2. By writ dated January 17, 2017, Constructora Norberto Odebrecht S.A. Sucursal Perú, delivered important information through their legal representative Lourdes Luisa CARREÑO CARCELÉN on payments made to Peruvian Officials regarding Line 1 Infrastructure Project – Sections 1 and 2 of the Lima Metropolitan Railway.

3. On January 19, 2017 this office started Preliminary Proceedings against the above mentioned persons

María del Carmen Pizarro Sabogal
CTP N° 0051

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3193

having ordered the opening of PRELIMINARY INVESTIGATION for the term of EIGHT MONTHS against: Jorge Luis CUBA HIDALGO as PERPETRATOR of the crime against public administration - INFLUENCE PEDDLING and the crime of MONEY LAUNDERING, both to the detriment of the Peruvian State; Edwin Martín LUYO BARRIENTOS, as PERPETRATOR of the crime against public administration - SOLICITATION AND ACCEPTANCE OF BRIBE and the crime of MONEY LAUNDERING, both to the detriment of the Peruvian State; and ODEBRECH as LEGAL ENTITY, pursuant to articles 90 of the Criminal Procedural Code and 105 of the Criminal Code.

4. On January 19, 2017 this office extended the Preliminary Proceedings and ordered the EXTENSION OF PRELIMINARY INVESTIGATION for the term of EIGHT MONTHS against: Jessica Carola TEJADA GUZMÁN, Mariella Janette HUERTA MINAYA and Miguel Ángel NAVARRO PORTUGAL as PERPETRATORS of the crime of MONEY LAUNDERING to the detriment of the Peruvian State; and against ODEBRECHT as LEGAL ENTITY, in accordance to articles 90 of the Criminal Procedural Code and 105 of the Criminal Code.

5. By Decision No. 03 dated January 21, 2017, this prosecutor's office ordered the formalization and continuation of the Preliminary Investigation, declaring it complex for the period of eight months, against Jorge Luis CUBA HIDALGO, as perpetrator of the crime against public administration - Influence

María del Carmen Pizarro Sabogal
CTP N° 0051

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3194

Peddling, as defined in the Criminal Code, first and second paragraph, article 400 and of the crime of Money laundering; Edwin Martín LUYO BARRIENTOS as perpetrator of the crime against public administration - Influence Peddling, as defined in the Criminal Code, first paragraph, article 393 and of the crime of Money laundering, both to the detriment of the Peruvian State.

6. By Decision No. 04 dated January 25, 2017, this prosecutor's office ordered extension of formalization and continuation of the Preliminary Investigation into Ángel Miguel NAVARRO PORTUGAL, as perpetrator of the crime of MONEY LAUNDERING to the detriment of the Peruvian State.

7. Finally, Decision No. 5 dated January 31, 2016, EXTENDED THE FORMALIZATION AND CONTINUATION OF THE PRELIMINARY Investigation into Jessica Carola TEJADA GUZMAN, as PERPETRATOR of the crime of MONEY LAUNDERING to the detriment of the Peruvian State; and, against Mariella Janette HUERTA MINAYA, as PERPETRATOR of the crime against public administration – SOLICITATION OR ACCEPTANCE OF BRIBE, as defined in the first paragraph, article 393 of the Criminal Code, and of the crime of MONEY LAUNDERING, both to the detriment of the Peruvian State.

8. As it was clearly established by Decision No. 1, dated January 17, 2017, this investigation addresses

María del Carmen Pizarro Sabogal
CTP N° 0051

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP No. 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3195

the actions of a criminal organization at international level which was constituted to pay bribes in different countries, Peru among them, to the point of creating a specific area within the Odebrecht Corporation to take care of such criminal purpose, called Structured Operations Division. However, as it was noted in the referred Decision, it is in the Prosecution Docket 19-2016, before the initiation of this case, where the crime of illegal association is being investigated. For this reason it does no longer correspond to include such accusation again in this docket, as provided under the Plenary Agreement of the Supreme Court No. 4-2016 (proscription of multiple criminal prosecution for unlawful association)

9. A set of acts have been developed within the framework of the preliminary investigation, that allow this Prosecutor's office to issue this extension provision, considering that the following fact is clearly connected to the actions of the international criminal organization created making use of the Odebrecht Corporation business structure, to pay illegal bribes in several countries, Peru among them, to be favored by officials and civil servants in the framework of huge infrastructure projects developed by the GOVERNMENTS.

## III. **FINDINGS OF FACT**

## **BACKGROUND INFORMATION**

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP N° 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3196

10. By Law 28214 published on April 30, 2004, the construction and paving of the **Peru-brazil Inter-ocean Highway Project** was declared of public need, national interest and preferred execution.

11. At the end of 2004, Jorge Henrique SIMOES BARATA, Superintendent of the company Odebrecht in Peru, was addressed during a social event at the Government House, by Avraham DAN ON, who introduced himself as agent of the then President of the Republic Alejandro TOLEDO MANRIQUE. In that opportunity he offered to favor that company (ODEBRECHT) in **the bidding processes for sections 2, 3 and 4 of the Peru-Brazil Inter-Ocean Highway Project.**

12. Subsequently, Avraham Dan On, Advisor to the President of the Republic TOLEDO MANRIQUE, called Jorge Henrique SIMOES BARATA to attend meetings at the Government House in order to be updated on the bidding process of such works. He accessed these meetings by the side door obviating entry registration. During one of these meetings, Avraham DAN ON told SIMOES BARATA that **in case the company ODEBRECHT was awarded with the contract, they should make unlawful payments in favor of the President of the Republic Alejandro TOLEDO MANRIQUE**, which amounts would be subsequently informed by officers of the Peruvian-Israeli businessman Josef MAIMAN.

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net      web: www.lexitrans.net

MARÍA DEL CARMEN PIZARRO SABOGAL
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3197

**CONCURRING EVENTS**

**13.** In the first week of November, 2004, Jorge SIMOES BARATA took part in a meeting held at the Presidential Suite of the Marriot Hotel, located in Av. Atlantica, Copacabana, Rio de Janeiro, Brazil. Also attending this meeting were Alejandro TOLEDO MANRIQUE, Josef Arieh MAIMAN RAPAPORT and two other members of his staff named **Gideon WEINSTEIN and Sabi SAYLAN.**

The hotel reservation was made in the name of **Josef Arieh MAIMAN RAPAPORT.**

In this meeting, **SIMOES BARATA** was informed by WEINSTEIN and SAYLAN that the unlawful payment in favor of former President **Alejandro TOLEDO MANRIQUE,** in case ODEBRECHT was awarded the contract, would be US\$ 35,000,000 (Thirty Five Million US Dollars) and that it should be made to different companies of the Josef MAIMAN business group through fictitious agreements with the company ODEBRECHT.

Likewise, the then President of the Republic **Alejandro TOLEDO MANRIQUE** stayed at the Copacabana Palace Hotel – Brazil, where the Summit of Presidents – "Rio Group Summit", was being held, where he participated together with other representatives of 19 countries of Latin America and The Caribbean.

German Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net     web: www.lexitrans.net

14. In the meeting held at the Marriot Hotel in Rio de Janeiro, the agreement reached between **ODEBRECHT and Alejandro TOLEDO MANRIQUE** was that the **"bribe"** would be paid only if the company won the selection process and that the then President of the Republic of Peru would ensure that timeframes were not to be delayed, and would modify clauses in the bidding conditions too hinder or prevent the participation of other companies.

TOLEDO MANRIQUE stated he wanted ODEBRECHT to be awarded the contract, however, in the end ODEBRECHT only paid a "bribe" of US$20,000,000 (Twenty Million US Dollars) as the bidding conditions were never modified.

15. Subsequent to the meeting in Rio de Janeiro, **SIMOES BARATA** held other meetings with **Josef MAIMAN RAPAPORT** at the end of 2004 and beginning of 2005, which took place in one of the residences of the latter in the district of Barranco (Lima), as well as in the headquarters of MAIMAN's company **"MERHAV PERÚ S.A."** located in the district of Miraflores (Lima). Some of these meetings were attended by **Alejandro TOLEDO MANRIQUE.**

16. On December 03, 2004, the Governing Board of Proinversión agreed, in accordance with provisions set forth by Law 28214, to deliver such Project in concession to the private sector, under mechanisms and procedures that corresponded to the private

María del Carmen Pizarro Sabogal
CTP N° 0051

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3199

investment promotion process, which management was assigned to the Proinversión Committee for Infrastructure and Public Service Projects.

17. On December 22, 2004, Alejandro TOLEDO MANRIQUE, then President of the Republic of Peru participated in the 87th session of the Governing Board of Proinversión, **held at the Government House** to discuss the approval of the Promotion Plan for the Peru-Brazil Inter-Ocean Highway Project.

18. By Supreme Decree 022-2005-EF, dated February 09, 2005, the sections included in the foregoing Project were exempted from standard application of the National Public Investment System (*Sistema Nacional de Inversión Pública-SNIP*) related to the pre-investment phase.

19. **On June 23, 2005,** the Proinversión Committee for Infrastructure Projects and Public Services awarded the Concession Agreements **for Sections 2 and 3 for the Peru-Brazil Inter-Ocean Highway Project** to the consortiums "*Concesionario Interoceánica Urcos – Inambari*" and "*Concesionario Interoceánica Inambari – Iñapan*" constituted by **Constructora Norberto Odebrecht S.A., Graña y Montero S.A., J.J. Camet Contratistas Generales S.A.** and **Ingenieros Civiles Asociados de CV.**

20. **On August 03, 2005,** Deputy Comptroller Rosa Elizabeth URBINA MANCILLA sent to Proinversión Official Letter 262-2005-CG/VC stating that the

MARÍA DEL CARMEN PIZARRO SABOGAL
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3200

reports from the Solicitor of the Comptroller General's Office had identified that the awarded companies, Odebrecht among them, were undergoing legal processes by and against the Government, which was in conflict with the bidding conditions that established that bidders should not have any pending legal actions with the Government, having such bidders submitted an affidavit in that sense. The Comptroller Office's purpose was to warn Proinversión to review the affidavits submitted by the companies.

21. As stated in his testimony, José Javier ORTIZ RIVERA, Minister of Transport and Communications from February 15, 2004 to July 28, 2006, during the administration of Alejandro TOLEDO MANRIQUE, was aware of Official Letter 262-2005-CG/VC because he had been called by the Minister of Economy at that time, Pedro Pablo Kuczynski Godard to inform him such document had been received in his office.

Upon consultation, in this regard, with attorneys of the Ministry of Economy, Proinversión and private attorneys, it was determined that the communication from the Comptroller's Office had been received at an inappropriate moment, the same day such companies had been called for signing in a public ceremony.

It was agreed that the representatives of the

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net    web: www.lexitrans.net

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP N° 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3201

awarded companies would ratify that their companies were not prohibited to enter into contracts with the Government and they proceeded to sign the agreements in public ceremony at 11:00 or 12:00 at the Government House.

22. The concession agreements for Sections 2 and 3, together with the additional clauses were executed on August 04, 2005, by the Peruvian Government and Concesionaria Interoceánica Tramo 2 S.A. and Concesionaria Interoceánica Sur-Tramo 3 S.A., companies incorporated by the successful bidder for the foregoing sections.

23. Following the awarding of the concession to the consortiums constituted by Odebrecht, this company made several unlawful payments to Alejandro TOLEDO MANRIQUE, as agreed.

The abovementioned payments were made in parts during the period 2006-2010 in accordance with the disbursements received as provided by the agreement, for the amount of US$ 20 million (Twenty Million US Dollars), with unaccounted funds from offshore accounts, through bank transfers abroad for companies under Josef MAIMAN's business group.

Part of such payments is reflected in the following chart (Chart 1) as reported by Odebrecht in prosecutor's record dated February 01, 2017:

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net      web: www.lexitrans.net

María del Carmen Pizarro Sabogal
CTP Nº 0051

**MARÍA DEL CARMEN PIZARRO SABOGAL**
**CTP No. 0051**
**Licensed Translator**

**CERTIFIED TRANSLATION No. 0294.4-2018**

Page 3202

| No | DATE | OPERATION Nº | PAYER | BANK OF ORIGIN | ACCOUNT OF ORIGIN | AMOUNT | INTERMEDIARY | BENEFICIARY | BANK OF DESTINATION | SWIFT CODE | BENEFICIARY ACCOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 23/06/2006 | C.06.934-1688 | | TREND BANK LIMITED | 20074 | $. 750,000.00 | | TRAIL BRIDGE LTD Midocean Chambers P.O. BOX 805 Road Town, Tortola - B.V.I. | CITIBANK LONDON (PRIVATE BANKIN) | CITIGB2L | 0-308-478-009 |
| 2 | 28/07/2008 | 077960800006696 | | TREND BANK LIMITED | 102145118 | $. 500,000.00 | FIRST CARIBBEAN REGIONAL HEAD OFFICE WARRENS | WARBURY AND CO 242 West George Street Glasgow G2 4QY Scotland | | BARCGB2 2 | GB64BARC20473557756799 |
| 3 | 05/08/2008 | 077960800006881 | E | TREND BANK LIMITED | 102145118 | $. 500,000.00 | | WARBURY AND CO 242 West George Street Glasgow G2 4QY Scotland | | BARCGB2 2 | GB64BARC20473557756799 |
| 4 | 27/11/2008 | C.08.2359-153464 | BARCLAYS BANK PLC | | | $. 500,000.00 | | WARBURY AND CO 242 West George Street Glasgow G2 4QY | | BARCGB2 2 | 57756799 IBAN NUMBER:GB64 BARC2047 3557 7567 99 |
| 5 | 14/10/2008 | C.08.2129-153205 | BANQUE DE LUXEMBOU RG | | | $. 377,000.00 | | LUCAS VALERA El Paraíso - Caracas - Venezuela | | | 1328271 IBAN NR. LU43 0081 3282 7100 2840 |

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP No. 0051
Licensed Translator

*MCP*
María del Carmen Pizarro Sabogal
CTP Nº 0051

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3203

| # | Date | Reference | Name | Bank | Number | Amount | Correspondent | Beneficiary Address | Beneficiary Bank | SWIFT | Account / IBAN |
|---|------|-----------|------|------|--------|--------|---------------|---------------------|------------------|-------|----------------|
| 6 | 16/12/2008 | C.08.2359-153464 | KLIENFELD SERVICES LIMITED | ANTIGUA OVERSEAS BANK LTD. | 1414631 | $ 500,000.00 | | WARBURY AND CO 242 West George Street Glasgow G2 4QY Scotland | BARCLAYS BANK PLC | BARCGB22XX | 57756799 IBAN NUMBER:GB64 BARC2047 3557 75567 99 |
| 7 | 22/12/2008 | | KLIENFELD SERVICES LIMITED | | 1414631 | $ 500,010.00 | | WARBURY AND CO 242 West George Street Glasgow G2 4QY Scotland | BARCLAYS BANK PLC | BARCGB22 | 57756799 IBAN NUMBER:GB64 BARC20473557756799 |
| 8 | 31/03/2009 | C.09.578-186969 | BARCLAYS BANK PLC | | | $ 505,000.00 | | WARBURY AND CO 242 West George Street Glasgow G2 4QY Scotland | | BARCGB22 | 57756799 IBAN NUMBER:GB64 BARC2047 3557 7567 99 |
| 9 | 31/03/2009 | C.09.578-186968 | BARCLAYS BANK PLC | | | $ 495,000.00 | | WARBURY AND CO 242 West George Street Glasgow G2 4QY Scotland | | BARCG22 | 57756799 IBAN NUMBER: GB64 BARC2047 3557 7567 99 |
| 10 | 18/11/2009 | | KLIENFELD SERVICES LIMITED | | 1414631 | $ 499,000.00 | | WARBURY AND CO 242 West George Street Glasgow G2 4QY Scotland | BARCLAYS BANK PLC | BARCGB22 | 57756799 IBAN NUMBER:GB64 BARC204735577556799 |
| 11 | 11/01/2010 | C.10.87-225808 | INTERCOP LOGISTIC LTD US | CITIBANK LONDON | | $1,000,000.00 | CITIBANK NA, NEW YORK CTA. 10990765 | MERHAV OVERSEAS LIMITED P.O. BOX 805, Roas Town Tortola, BVI | CITIBANK LONDON (PRIVATE BANKING) | CITIGB2L | 0/309194/001 |

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net      web: www.lexitrans.net

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP No. 0051
Licensed Translator

María del Carmen Pizarro Sabogal
CTP Nº 0051

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3204

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 12 | 11/01/2010 | C.10.87-209262 | INTERCOP LOGISTIC LTD US | | | $1,000,000.00 | | WARBURY AND CO 242 West George Street Glasgow G2 4QY Scotland | BARCLAYS BANK PLC | BARCGB2 2 | 57756799 IBAN NUMBER:GB64 BARC2047 3557 7567 99 |
| 13 | 22/01/2010 | | INTERCOP LOGISTIC LTD US | | | $.550,000.00 | | WARBURY AND CO 242 West George Street Glasgow G2 4QY Scotland | BARCLAYS BANK PLC | BARCGB2 2 | 57756799 IBAN NUMBER: GB64 BARC2047 3557756799 |
| 14 | 04/03/2010 | | KLIENFELD SERVICES LIMITED | | 1414631 | $.550,000.00 | CITIBANK NA, NEW YORK CTA. 10990765 | MERHAV OVERSEAS LIMITED P.O. BOX 805, Roas Town Tortola, BVI | CITIBANK LONDON | | 0/309194/001 |
| 15 | 17/03/2010 | | INTERCOP LOGISTIC LTD US | | 1558230 | $.450,000.00 | CITIBANK NA, NEW YORK CTA. 10990765 | MERHAV OVERSEAS LIMITED P.O. BOX 805, Roas Town Tortola, BVI | CITIBANK LONDON | CITIGB2L | 0/309194/001 |
| 16 | 29/03/2010 | | INTERCOP LOGISTIC LTD US | | 1558230 | $.450,000.00 | CITIBANK NA, NEW YORK CTA. 10990765 | MERHAV OVERSEAS LIMITED P.O. BOX 805, Roas Town Tortola, BVI | CITIBANK LONDON | CITIGB2L | 0/309194/001 |

*mep*
María del Carmen Pizarro Sabogal
CTP Nº 0051

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP No. 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3205

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 17 | 24/05/2010 | C.10.1018-230420 | INNOVATION RESEARCH ENGINEERING | | | $. 250,000.00 | CITIBANK NA, NEW YORK CTA. 10990765 | MERHAV OVERSEAS LIMITED P.O. BOX 805, Roas Town Tortola, BVI | CITIBANK LONDON | CITIGB2L | 0/309194/001 |
| 18 | 03/06/2010 | | INNOVATION RESEARCH ENGINEERING | ANTIGUA OVERSEAS BANK LTD. | | $. 250,000.00 | CITIBANK NA, NEW YORK CTA. 10990765 | MERHAV OVERSEAS LIMITED P.O. BOX 805, Roas Town Tortola, BVI | CITIBANK LONDON | CITIGB2L | 0/309194/001 |
| | | | | TOTAL TRANSACTIONS | | $.9,626,010.00 | | | | | |

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP N°. 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3206

24. When Alejandro TOLEDO MANRIQUE finished his mandate as President of the Republic of Peru and upon delay of the unlawful payments by Odebrecht, BARATA was called to the former President's home in Camacho in order to pressure him to continue with the payments.

This is the reason why there are transfers even during 2010.

**SUBSEQUENT EVENTS**

25. Law 28670 was published on January 26, 2006 (Law declaring several investment projects of public need and national interest) which article 1 provided:

"The implementation of the preliminary works by the Executive Power and the signing and execution of concession agreements for the Construction, Operation and Maintenance of the road sections of the North Amazon Multimodal Axis of the South American Infrastructure Plan, IIRSA and the works and maintenance of the road sections of the Peru-Brazil South Inter-ocean Highway Project and Construction of the Angostura Dam (*Represa de Angostura*) in the Department of Arequipa, are hereby declared of public need and national interest, **the validity of which is ratified (…)**"

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net    web: www.lexitrans.net

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3207

26. As established in the Minority Report signed by Congressman Juan PARI COCHECOTA, Law 28670 was discussed and approved during parliament recess by the Permanent Committee of Congress on January 25, 2006, that is one day before its publication. The bill was submitted by Congressman Gilberto DÍAZ PERALTA, from the party *Perú Posible,* of the then President Alejandro TOLEDO MANRIQUE.

The above-mentioned law validated the IIRSA Norte and IIRSA Sur concession agreements, as well as the pre-contractual stage This prevented the General Comptroller's Office from conducting a thorough control review of these concessions, as may be appreciated in the Special Report No. 117-2011-CG/OEA-EE of 2011.

27. It is public knowledge, as it has been published in the web page of the United States Department of Justice (www.justice.gov) that the companies Odebrecht and Braskem declared themselves guilty and agreed to pay at least US$3.5 billion in global penalties to solve one of the largest cases of foreign bribery in history.

28. The foregoing agreement, specifically paragraphs 66 and 67 of the document, reads as follows:

"66. In or about and between 2005 and 2014, ODEBRECHT made and caused to be made

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP No. 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3208

approximately $29 million in corrupt payments to government officials in Peru in order to secure public works contracts. ODEBRECHT realized benefits of more than $143 million as a result of these corrupt payments.

67. For example, in or about 2005, ODEBRECHT participated in a tender for a government infrastructure project. During the tender process, an ODEBRECHT employee was approached by an intermediary of a high-level official in the Peruvian government, who offered to support ODEBRECHT's bid, if, in the event that ODEBRECHT was awarded the project, it would make corrupt payments benefiting the government official. The payments were agreed to be paid through companies owned by an intermediary who had a relationship with the government official. After the initial conversations with the intermediary, the ODEBRECHT employee participated in several meetings, some of which were attended by the government official. ODEBRECHT won the tender and made corrupt payments totaling approximately $20 million from approximately 2005 to 2008 to specific companies, as directed by the intermediary, with unrecorded funds from the Division of Structured Operations.

29. As it may be appreciated, the text recorded under number 67 of the United States of America Department of Justice Agreement, clearly coincides

María del Carmen Pizarro Sabogal
CTP N° 0051

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net    web: www.lexitrans.net

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP No. 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3209

with the testimony of "Effective Collaborator"
Jorge Henrique SIMOES BARATA, who under the
subtitle of "unlawful payment to the then President
of the Republic of Peru Alejandro TOLEDO, as a
result of the bidding process of the South Inter-
ocean Road – Section 02  and Section 03," has
confessed having paid bribes to Alejandro TOLEDO
MANRIQUE through transfers to companies belonging
to Josef MAIMAN's business group.

### i) LINKS BETWEEN YOSEF A. MAIMAN AND ALEJANDRO TOLEDO MANRIQUE

30. Yosef A. MAIMAN or Josef Arieh MAIMAN RAPAPORT is a
Peruvian-Israeli businessman, owner of many
companies that operate worldwide. His close
friendly relationship with the former President of
the Republic Alejandro TOLEDO MANRIQUE is well
known in Peru.



German Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net    web: www.lexitrans.net

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3210

TOLEDO-KARP family with MAIMAN in China, October 2001[7]

**31.** Currently, Josef A. MAIMAN, Alejandro TOLEDO MANRIQUE and others are involved in an investigation conducted by the Corporate Supra-district Attorney's Office Specialized in Money laundering and In Rem Forfeiture Procedures, for the alleged crime of money laundering (Prosecution Record 02-2014, Court Docket 7091-2014.)

This investigation ("Case Ecoteva") deals with the acquisition of two real estate properties valued in more than US $ 4.5 million (Four Million and Five Hundred Thousand US Dollars) and the settlement of mortgage loans of other properties owned by the TOLEDO-KARP marital partnership.

In the foregoing investigation, Josef A. MAIMAN is accused of having incorporated companies and opened accounts in Switzerland and London banks to receive money from unlawful commission payments from companies that had contracted with the Peruvian Government during the administration of former President Alejandro TOLEDO MANRIQUE.

To that effect he would have incorporated the company *Confiado Internacional Corp.* with a bank account in the LGT Bank Switzerland Ltda., in Switzerland, from where transfers were made to the companies Ecostate and Milan created in Costa Rica.

---

[7]    Source:
http://caretas.pe/Main.asp?T=3082&w=1&idG=63784Idx= 1#top

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net    web: www.lexitrans.net

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP No. 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3211

Subsequently, in 2012, transfers were made to Ecoteva Consulting Group S.A. and from there, through complex financial operations; funds were drawn for the acquisition of real estate properties in Peru in the name of Eva Fernenbug (TOLEDO's mother-in-law) and for mortgage payments of real estate properties owned by the TOLEDO-KARP marital partnership.

32. Another investigation in course evidencing the relationship between Yosef A. MAIMAN and Alejandro TOLEDO MANRIQUE is the one currently followed against César Augusto ALMEYDA TASAYCO[8] a high public official during the presidential mandate of Alejandro TOLEDO MANRIQUE, for the crime of money laundering, before the 10th Criminal District Attorney's Office in and for Lima. The investigation was initiated when it was reported that a public official owned two bank accounts in the Citibank – Berkley Square in London, and in the LGT Bank in Vaduz, Principality of Liechtenstein, which had been allegedly used to receive money from bribery.

In this case it was determined that account No.307085 kept at the Citibank – Berkley Square in London that was initially attributed to César ALMEYDA is really registered by the name of Yosef A. MAIMAN.

---

[2]    During President Alejandro TOLEDO's mandate, this person was member of the Board of CONASEV (2002), Head of INDECOPI (2002)Head of the National Intelligence Council (2003) permanent member of the Committee of Proinversión (2003-2004), besides being member of the Board of Petroperú and Banco de Materiales.

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net    web: www.lexitrans.net

María del Carmen Pizarro Sabogal
CTP Nº 0051

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP No. 0051
**Licensed Translator**

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3212

33. Likewise, it is worth to point out that investigation 14-2016 (MAIMAN Case) is currently being conducted by this District Attorney's Office for the crime of money laundering charged against MAIMAN whose previous criminal activity is related to alleged bribery committed by the Brazilian company Camargo Correa within the framework of Section 4 of the Inter-ocean Highway, specifically concerning a transfer of US$ 91,667.00 (Ninety-one Thousand Six Hundred and Sixty-seven US Dollars) made on June 22, 2006 by Trade Center Financial Corp. through Schweizerische Hypotheken-Und Handelsbank, transaction No. 538226174011, which is the exact amount shown in the bribery expense reserve chart for the Inter-ocean Highway - Section IV, as an approved transfer operation to Citibank London (Private Banking).

34. Such investigation contains bank information sent by competent authorities of the United Kingdom, which shows, according to Decision No. 01 to commence the preliminary investigation, an operation materialized on June 28, 2006, from Trend Bank Limited Brazil, through the First Caribbean Intl. Bank, through to transfer to account No. 7/308478/003 of the Citibank London (Private Banking) the amount of US$749,985.00 (Seven Hundred and Forty-nine Thousand, Nine Hundred and Eighty-Five US Dollars) - transaction No. 538226179015.

María del Carmen Pizarro Sabogal
CTP N° 0051

CERTIFIED TRANSLATION No. 0294.4-2018

The Citigroup Private Bank account No. 308478 was opened on April 25, 2003 in the name of Trailbridge Ltd, whose directors were Yosef MAIMAN and Michele YANKIELOWICKZ or Michele MAIMAN FIRON, who appear as legal representatives of the company in the account documents.

Account **308478** shows in it sub-accounts: No. 7/308478/003 and 0-308478/009

It is important to point out in this regard that among the documents delivered by Odebrecht to the Attorney General's Office there is a report of the payment order and debit request to the Trend Bank Limited, dated June 23, 2006 and June 26, 2006, respectively, in the amount of US$ 750,000 (Seven Hundred and Fifty Thousand US Dollars) as transfer to account No. 0/308478/009 in Citibank London (Private Banking) belonging to Trailbridge Ltd., which temporarily and in view of the amount, it may be stated that it is the same operation described in investigation 14-2016 for the amount of US$ 749,985.00 (Seven Hundred and Forty-nine Thousand Nine Hundred and Eighty-five US Dollars) dated June 28, 2006, reported in the bank information received from the United Kingdom.

35. As it may be appreciated, Yosef A. MAIMAN and Alejandro TOLEDO MANRIQUE are clearly related, not only on account of a close friendship that is publicly known in Peru, but also because there is more than one current investigation for the crime

María del Carmen Pizarro Sabogal
CTP N° 0051

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net    web: www.lexitrans.net

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3214

of money laundering involving them both.

## ii) THE MERHAV GROUP AND ITS RELATIONSHIP WITH YOSEF A. MAIMAN

36. According to information available online, Merhav
    MNF Ltd., is a company incorporated in 1975 that
    constitutes part of the Merhav Group of Companies.
    This company is specialized in developing great
    infrastructure scale projects, covering all project
    stages from funding and design through construction
    and management, with presence in different
    countries of America, Europe, Africa and Middle
    East, among others. Both companies register their
    headquarters at 33 Havazelet Hasharon, 4664129
    Herzliya, Israel, and both having Yosef A. MAIMAN
    as Chairman:





CONTACT

MERHAV Group of Companies
33 Havazelet Hasharon St.
Herzliya, Israel 46105
Tel.: +972 9 950-1733
Fax: +972 9 950-1733
Email: MerhavGroup@merhav.com

Joseph A. Maiman
Chairman
Fmaiman@Merhav.com

MARÍA DEL CARMEN ZEARO SABOGAL
CTP No. 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3215

## IV.  LEGAL GROUNDS AND PERSONAL IMPUTATIONS

| CHARGES AGAINST ALEJANDRO TOLEDO MANRIQUE |
| --- |

### For crimes against Government Administration – Influence Peddling

**37.** According to the terms of the facts described in the corresponding section, we may summarize as follows:

- It is attributed to Alejandro TOLEDO MANRIQUE that in 2004, when exercising the position of President of the Republic of Peru, he offered Jorge Henrique SIMOES BARATA, Superintendent of the Odebrecht Company in Peru, the possibility to be awarded with the contract for the Peru – Brazil Inter-ocean Highway Project, in return for the payment of US$ 35'000,000.00 (Thirty Five Million US Dollars)

- Alejandro TOLEDO MANRIQUE offered Jorge Henrique SIMOES BARATA that he would take care that the foreseen terms of the projected would not be postponed and that the bidding conditions were modified to hinder or prevent the participation of other companies.

- Between 2006 and 2010 Alejandro TOLEDO MANRIQUE received, through the companies of Josef MAIMAN, the amount of US$ 20'000,000.00 (Twenty Million

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net     web: www.lexitrans.net

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3216

US Dollars) of which more than approximately US$ 11 million have been identified to this date.

## For the Crime of Money laundering

**38.** Concretely, the imputations that fall upon Alejandro TOLEDO MANRIQUE for the alleged commission of money laundering rest upon the fact that he used, in the period between 2006 and 2010, various bank accounts (beneficiary accounts) of Josef MAIMAN's offshore companies (Trailbridge Ltd., Warbury and Co., Merhav Overseas Limited), as well as the corporate structures themselves (conversion acts) in order to make complex financial operations for approximately US$ 9'626,010.00 (Nine Million Six Hundred and Twenty-six Thousand and Ten US Dollars.)

It is worth considering that the first deposit in each of the accounts constitutes a conversion act, while the subsequent deposits that were made over time were transfers, in the legal sense of alteration or mutation of such accounts, as initial balances were increased.

To this effect, it is necessary to consider that the imputed TOLEDO MANRIQUE had dominion over the fact as it was he who ordered the deposits to be made into the accounts of his friend Josef MAIMAN RAPAPORT, according to the testimony of Jorge Henrique BARATA SIMOES. Besides, he would be the final and real beneficiary.

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net    web: www.lexitrans.net

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP No. 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3217

Even though it does not constitute part of this imputation, it must be specified that in the "Ecoteva" case TOLEDO MANRIQUE was attributed to have made complex financial operations to perform several concealment processes to channel the unlawful money to another group of offshore companies that were created for the acquisition of movable and immovable goods.

**His condition as PEP – Politically Exposed Person and Strengthened Regime**

39. In the second place, it must be noted that Alejandro TOLEDO MANRIQUE had the condition of PEP (politically exposed person) under the applicable regulations on the matter, as provided in article 2 of the SBS Resolution No. 4349-2016:

"Politically exposed persons (PEP) are national or foreign individuals who perform or have performed prominent or notorious public functions during the last five (5) years in an international organization, whether in national or foreign territory, and whose financial circumstances may be matter of public interest. Likewise, the direct collaborator of the institution's maximum authority is considered a PEP."

The definition of politically exposed person is included in article 2 of the Regulations on functions and positions developed or held by politically exposed persons (PEP) in the matter of money laundering and terrorism financing prevention approved by article 1 of

María del Carmen Pizarro Sabogal
CTP N° 0051

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3218

this Resolution: It supersedes the definition of politically exposed persons included in:

- Item k) of article 2 of the Regulations for the Prevention of Money laundering and Terrorism financing applicable to reporting entities with no formal oversight, approved by Resolution SBS No. 486-2008 and modifying rules.
- Item o) of article 3 of the Special Regulations for the Prevention of Money laundering and Terrorism Financing applicable to Notaries, approved by Resolution SBS No 5709-2012 as amended.
- Item u) of article 2 of the Regulations for the Prevention of Money laundering and Terrorism Financing applicable to Customs Agents and Owners, Consignees or Shippers authorized to operate as Forwarding Agents, approved by Resolution SBS No. 2249-2013, as amended.

Consequently, having held the highest hierarchical position in the Nation as President of the Republic, he met the requirements under the definition of a PEP (politically exposed person).

40. It is now necessary to explain the legal consequences that fell on Alejandro TOLEDO MANRIQUE in his condition as PEP, one of them being the immediate application of a strengthened money laundering prevention system, that is, the highest

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP No. 0051
**Licensed Translator**

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3219

supervision level by the National Superintendence of Banking and Insurance Companies (SBS). As stated in Article 32 of SBS Resolution 2660-2015, the special system is summarized as follows:

Article 32.- Strengthened due diligence based on knowledge of the clients. The companies must identify and register under this regime the clients who in the course of the business relationship evidence a pattern that does not match their Money laundering/Terrorism Financing (LA/FT) risk profile, as well as those who may be highly affected by Money laundering and Terrorism Financing (LA/FT) risks. This regime must be mandatorily applied to the following clients:

(…)
(e)    Persons politically exposed (PEP). Companies must also reinforce their client understanding procedures when one of their clients becomes a PEP after having started business relations.
(f)   Identified as: i) relatives of a PEP up to second degree of kinship and second of affinity and ii) spouse or common law spouse of a PEP.
(g) Legal entities in which a PEP has 25% or more participation or interest in the capital stock.
(h) Partners, shareholders, associates or equivalent title and managers of legal entities where a PEP has 25% or more participation or interest in the capital stock (…)

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP No. 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018
Page 3220

The company must implement the following due diligence measures for all clients registered under this system:

a) In case of a PEP, the name of his/her relatives up to the second degree of kinship and second degree of affinity must be requested, as well as of the spouse or common law spouse and the list of legal entities where he/she may have a participation equal to or higher than 25% of its capital stock.

b) Increase the frequency in the review of clients' transactional activity;

c) Increase the frequency in updating client information; in the case of legal entities, an annual updating of its shareholders, partners, associates or equivalent title, who may have, directly or indirectly, more than 25% of their capital stock, as applicable.

d) Conduct enquiries and apply additional identification and verification measures, such as: obtaining information on the main suppliers and clients, gathering data from public or open sources, visits to their principal place of business.

e) The decision to accept and/or maintain the relationship with the client falls under the highest management level of the company or

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3221

similar position, who may delegate this
responsibility to another management position
within the organization or to a committee
established to that effect, keeping the
responsibility to accept and/or maintain or not a
client.

**41.** From the foregoing it may be inferred that
Alejandro TOLEDO MANRIQUE was fully and completely
aware of the limitations and complications that
would have arisen if he had decided to place the
offshore bank accounts and companies indicated in
this case, under his name. For this and no other
reason, Alejandro TOLEDO MANRIQUE had to establish
at least one front man from his closest surrounding
and of his complete trust, as was the case of Josef
Maiman, who has been a close friend for many years.

**The Final Beneficiary concept**

**42.** Another important concept that needs to be
addressed is the "final beneficiary" concept, given
that Alejandro TOLEDO MANRIQUE coordinated with
Josef MAIMAN to use his corporate structure and
give an appearance of legitimacy to the funds
illegally obtained, under the unsubstantiated
version that they would be the result of fictitious
contracts.

In this regard, Article 28 of SBS Resolution 2660-2015
provides a brief definition for both individuals and

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP N° 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3222

legal entities:

"Article 28.- Under the LA/FT prevention system, the final beneficiary is the individual in whose name a transaction is made and/or who holds or exercises the final effective control of a client on behalf of whom an operation is made. It also includes the persons who exercise final effective control over a legal entity."

43. It is the permanent obligation of the companies to identify the final beneficiaries of all the services or products they supply and to take reasonable measures to verify their identity, to the extent permitted by the due diligence, in order to be accurately convinced of who the final beneficiary is.

44. In the case of legal entities, if it is not possible to determine who holds the final effective control, the majority participation considers the controlling party by other means; and only when in such cases an individual may not be identified, the individual holding management and/or executive positions shall be considered (…)*

**CHARGES AGAINST JOSEF ARIEH MAIMAN RAPAPORT**

**<u>For Money laundering</u>**

45. Specifically, the accusations against Josef Arieh MAIMAN RAPAPORT for the alleged perpetration of

María del Carmen Pizarro Sabogal
CTP Nº 0051

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3223

money laundering rest upon having facilitated his co-accused Alejandro TOLEDO MANRIQUE several bank accounts of his offshore companies (Trailbridge Ltd., Warbury and Co., Merhav Overseas Limited) and his actual corporate structures (conversion acts) to perform complex financial operations for amounts of approximately US$9'626,010 (Nine Million, Six Hundred and Twenty-six Thousand and Ten US Dollars) (transfers) detected so far, seeking to make a first concealment.

46. Even if not part of this accusation, it is worth specifying that in the "ECOTEVA" case there is an accusation concerning complex financial operations aimed at executing several concealment processes to channel illegally obtained funds to accounts of another group of offshore companies that had been established for the acquisition of real and personal property.

## V.  **LEGAL CHARACTERIZATION OF THE IMPUTED FACTS**

**ALEJANDRO TOLEDO MANRIQUE, SUSPECT UNDER INVESTIGATION**

A.  **Legal Criminal Charge in the Crimes against Public Administration, Influence Peddling.**

47. The Influence Peddling Offense is characterized in Section 400 (Law 28355) in the following terms:

**Section 400. Influence Peddling**

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net    web: www.lexitrans.net

María del Carmen Pizarro Sabogal
CTP N° 0051

Whoever, invoking or having real or simulated influences, should receive, induce the giving of or make someone promise for him or for a third party, a donation or promise or any other benefit, offering to mediate with a public official or servant who will be, is or has been involved in the hearing of a legal or administrative action, shall be punished with imprisonment of not less than four or more than six years.

If the agent is a public official or servant, he shall be punished with imprisonment of no less than four or more than eight years and disqualification from holding public office pursuant to the provisions in paragraphs 1 and 2 of Article 36 of the Criminal Code.

48. The Influence Peddling Offense requires the following elements for the configuration of its aggravated form:

    a) Public official or servant

    b) Invoking or having real or simulated influences

    c) Inducing the giving of an economic benefit for himself

    d) Offering to mediate before a public official involved in the hearing of an administrative proceeding.

49. In this case, as already mentioned, it is a public

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3225

and widely known fact that the investigated Alejandro TOLEDO MANRIQUE was President of the Republic from 2001 to 2006.

50. Meanwhile, according to the historic account rendered by Jorge Henrique SIMOES BARATA, Superintendent of Odebrecht in Peru, at the end of 2004, Alejandro TOLEDO MANRIQUE, directly and indirectly offered to support the company for them to win the Bidding Process for the Peru-Brazil Inter-Ocean Road Corridor Project (Inter-Ocean Highway); in addition to offering them the immutability of the process terms and the change of the bidding conditions to hinder or prevent the participation of other companies, the latter being competencies pertaining to Proinversión officials. This circumstance covers the requirements to configure influence peddling.

51. Supreme Resolution 156-2004-EF dated December 21, 2004, issued on that same date, among other things, entrusted the conduction of the promotion of the private investment process to the Proinversión Committee. The invitation to the Bidding Process was issued on January 19, 2015 and the Contract was awarded on June 23, 2005 to the winning consortium formed by the company Odebrecht). This fact covers the objective element concerning the type connected with the administrative process.

52. According to the details of the financial

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP No. 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3226

operations furnished by the Company Odebrecht, related to payments made to the companies of Josef MAIMAN, the transfers of funds to the latter, who received the funds for and on behalf of Alejandro TOLEDO, are clearly evidenced.

53. It is absolutely necessary to mention that the Influence Peddling offense is a common crime, which is materialized with the purchase of the offered influence ("induce to give or promise"); **in this case, the consummation act extended – according to the information we have been able to gather – through 2010.**

54. In his capacity as President of the Republic, the influence he presented to the Superintendent of Odebrecht Perú was a real influence, associated with the Special Committee of Proinversión that would be in charge of carrying out the Selection Process for the Inter-Ocean Highway.

**B. Legal Criminal Charge in the Crime of Money laundering**

**§ 1. Legal Framework**

55. Money laundering is an economic, accounting and financial process that seeks to give an appearance of legitimacy to the money, goods, effects, earnings and any other asset illegally obtained. For criminal organizations it has substantially two purposes, the first one, to recapitalize their

María del Carmen Pizarro Sabogal
CTP N° 0051

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3227

criminal activities and the second one, to enjoy with impunity the earnings or income obtained as a result of their illegal activities.

56. Money laundering has three stages: i) Placement; ii) Layering; and iii) Integration. This division helps construct the crime of money laundering, since the first stage is where the conversion acts take place, the second stage is where the transfer acts occur and the third stage is where the concealment and holding take place; however, there is no doubt that the most important part is that the main goal pursued is to give an appearance of legitimacy to the illegal assets.

57. Certainly, it is important to underscore that these stages will always occur on a cyclical basis, that is, once the three stages are completed within a determined timeframe – short or long – the very economic dynamics and needs of Organized Crime will give rise again to not only one but several money laundering cycles, having, for example, in some cases, chronologically, an act corresponding to the integration stage in the first place and the following year, a placement act, but which correspond to different laundering cycles, one completed and another one starting.

58. The law in force at the time of the perpetration of the acts imputed is the one applicable to the money laundering crime that is foreseen and sanctioned in

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net     web: www.lexitrans.net

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP N° 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3228

the original text of Law 27765 - Criminal Law on Money laundering, which characterizes conversion and transfer acts as follows:

> **"Article 1. Conversion and Transfer Acts**
> Whoever should convert or transfer money, goods, effects or earnings, being aware of or presuming their illegal origin, seeking to prevent that their origin be identified, and that they be seized or confiscated, shall be punished with imprisonment of not less than eight years or more than fifteen years and with one hundred and twenty to three hundred fifty days fine.

## § 2. Typical conducts

59. With respect the conversion acts, according to PRADO SALDARRIAGA: "Conversion acts involve all possible forms of primary placement or mobilization of liquid funds; we may even consider among them also the gathering of dirty money, as long as it is performed by the agent in charge of the laundering operation[9]". In turn, GÁLVEZ VILLEGAS states: "In a broad sense, conversion is understood as any placement of goods or capitals, while in a restricted sense it is the economic operations that consists in placing goods and capitals to achieve a specific economic benefit[10]".

---

[9]   Victor Roberto PRADO SALDARRIAGA, "New Criminal Process, Criminal Reform and Policy" ("*Nuevo Proceso Penal, Reforma y Política Criminal*") Lima, 2009, p. 384.
[10]   Tomás GÁLVEZ VILLEGAS, "The Crime of Money laundering"



María del Carmen Pizarro Sabogal
CTP N° 0051

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net      web: www.lexitrans.net

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3229

**60.** With regard to transfer acts, the doctrine has established that: "Transfer acts are related to the second stage of the money laundering circuit: layering. Here, specific behaviors that may take place vary according to the method and strategy defined at the beginning of the laundering operation. Thus, for example, using several front persons to simulate the selling and purchasing of real property, such as apartments, land, hotels, casinos or gas stations, or highly valuable movables, such as vehicles, yachts, river vessels, motorcycles, jet skis, etc., which will generate innumerable owners in the Public Record entries, thus hindering an investigation[11]". Both conversion acts and transfer acts have an instant nature.

## § 3. Subject matter of the Crime

**61.** According to the legal text, the subject matter of the crime is based on four types: money, goods, effects or earnings. The doctrine states: "The Peruvian legislator has, thus, opted to incorporate alternative and detailed formulas to indicate the subject matter of the criminal action. The common element to them is their economic and ownership connotation. In principle it refers to cash money,

---

("El Delito de Lavado de Activos") Grijley, Lima, 2004, p. 62.
[11] Marcial PÁUCAR CHAPPA, "Investigation of Money laundering" ("La investigación del delito de lavado de activos") ARA Editores, ima 2003 p. 36.

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net     web: www.lexitrans.net

María del Carmen Pizarro Sabogal
CTP N° 0051

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3230

to then include the goods that may have been successively acquired with such money and even to the earnings that may be obtained as return or interest from investments and deposits once the laundering process has been completed in the integration stage. (…) Thus, the intention of the national legislator is that the multiple categories may adapt and easily cover, given their flexibility and hermeneutical equivalence, the multiple variations that may occur and arise during the operative cycle of the money laundering process from the time the illegal money produced is placed[12]".

## § 4. Subjective aspect

### 1. Fraud

62. The crime of money laundering may be executed through actual fraud or through fraudulent intent, given that the legislator has used the formula "known, aware of" for the first and "may be presumed, may presume" for the second. It is necessary to clarify that fraudulent intent shares a very fragile and almost imperceptible borderline zone; however, the majority doctrine has stated that while both in fraudulent intent and in conscious guilt the agent is aware of the danger,

María del Carmen Pizarro Sabogal
CTP N° 0051

---

[12]   Víctor Roberto PRADO SALDARRIAGA, "New Criminal Process, Criminal Reform and Policy" ("*Nuevo Proceso Penal, Reforma y Política Criminal*") Lima, 2009, p. 384.

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net     web: www.lexitrans.net

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP No. 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3231

in fraudulent intent the agent takes the risk without taking any precautions, while in conscious guilt the agent believes he can avoid the result.

## 2.   Transcendent internal tendency

63. The legal text has also provided within subjective characterization a special element that must accompany fraud called "transcendent internal tendency", since it is a goal pursued by the agent with his illegal action, but does not require materialization; it suffices that the goal is being pursued at the time the illegal act is consummated, which in the case of money laundering is reflected in up to three presumptions: i) to obstruct the identification of the illegal origin, ii) hinder seizing, or iii) frustrate confiscation.

## § 5. Preceding offense

64. In this area it is necessary to make a previous clarification, as it should be, with regard to the structure of the money laundering type of crime, which literally establishes as an element of the crime the "illegal source" and not the "preceding offense". In this regard, both the doctrine and the precedents have offered accurate answers for their adequate interpretation.

65. The money laundering crime is an autonomous offense

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP N.o 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3232

and does not require materialization or proving of the preceding offense or source offense, inasmuch as the type of crime itself only makes reference to the "illegal source".

**66.** In that same sense, the Supreme Court of Justice has set as a jurisprudence guideline the following:

"… *It is not a requirement of the type of crime for the agent to be aware of what preceding crime is involved, when it was perpetrated or, let alone, who participated in the execution thereof.*

*The actual fraud perpetrated by an agent does not need, either, to cover the procedural situation of the preceding offense or of its perpetrators or participants. Likewise, in the case of acts of concealment and holding, the fact that the perpetrator is aware of or is informed of the actions prior to the conversion or transfer is not part of the subjective characterization of the crime, let alone that he knows who was involved in them*";

**67.** Furthermore, on May 16, 2013, the Government General Attorney's Office informed the following through Official Letter 024-2013-MP-FN-SEGFIN addressed to the Presidents of the Boards of Senior Attorneys at national level:

"…*that pursuant to the provisions of Article 10 of*

María del Carmen Pizarro Sabogal
CTP N° 0051

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3233

*Legislative Decree No. 1106 on effective fight against money laundering and other offenses related to illegal mining and organized crime, money laundering is an autonomous offense and has no source offense, hence, the investigation and prosecution thereof proceeds regardless of whether the criminal activities that produced the money, assets, effects or earnings are previously discovered, are under investigation, in court or that they may have been previously the subject matter of a conviction evidence or judgment. (…)*

*They should instruct their Prosecutors in charge of money laundering investigations in every Prosecution District to comply strictly with the provisions of the above norm, under liability to be otherwise reported to the Decentralized Prosecution Offices for Internal Control…"*

68. It is in strict compliance with the above-mentioned provision regarding "institutional discretion" on the autonomy of the money laundering crime that this prosecution instrument grounds its incriminatory hypothesis.

## § 6. Matching facts to the defined crime of Money laundering

69. The active subject is in this case represented by Alejandro TOLEDO MANRIQUE, to whom the laundering configuration – legally punishable – would be

María del Carmen Pizarro Sabogal
CTP Nº 0051

applicable. In the second place, the "acts of conversion" (placement stage) are represented by the use of both the offshore companies of Josef MAIMAN and his bank accounts, that is, the insertion of the bribes paid into the legal economic and financial circuit, materialized between the years 2006 and 2010; while the "acts of transfer" (layering stage) are configured by all subsequent acts mentioned in the charges imputed. In the third place, it is pertinent to establish that the subject matter of the money laundering offense is represented by the money being paid by the company Odebrecht as part of the "bribe" or illegal fee that Alejandro TOLEDO had demanded in exchange for favoring such company in public bidding processes, amount that totaled approximately US$ 20'000 (Twenty Million US Dollars) of which US$ 9'626,010 (Nine Million, Six Hundred Twenty-six Thousand and Ten US Dollars) have so far been identified.

70. The typology identified in this case is a structuring one, as may be observed in the following chart; the first placement stage shows a closer connection with the criminal activities (bribe or illegal fees) while the second stage of layering shows the full intention of the agent to take the illegally obtained assets as far away from their illegal source:

German Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net    web: www.lexitrans.net

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP No. 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3235



María del Carmen Pizarro Sabogal
CTP Nº 0051

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net     web: www.lexitrans.net

MARÍA DEL CARMEN PIZARRO SABOGAL
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3236

71. It must be kept in mind that these structuring operations in the accounts of a third party (Josef MAIMAN) were executed with intention of preventing the illegal source (bribes paid by the company Odebrecht) from being identified, as Alejandro TOLEDO had a "Politically Exposed Person" (PEP) condition and had to elude the Money laundering/Terrorism Funding prevention system corresponding to the strengthened system. Adding to the foregoing, it is clear that Alejandro TOLEDO was the "final beneficiary".

72. In connection with the foregoing, the subjective characterization of the crime has two substantial elements that also concur here directly. The first one, fraud, is materialized with knowledge of the illegal origin and destination the money had (corruption). The second one, the transcendent internal tendency, is configured precisely by the intention he had of avoiding the identification of his criminal connection, which in this specific case is evidenced by the fact that he evaded the controls of the money laundering prevention system, a fact that is corroborated with the order he gave to Jorge BARATA, representative of the company Odebrecht, to execute the fictitious contracts between the companies of MAIMAN and his principal.

| JORGE HENRIQUE SIMOES BARATA, SUSPECT UNDER INVESTIGATION |
| --- |

German Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net    web: www.lexitrans.net

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3237

**a.  Legal Criminal Charge in the Crime of Influence Peddling**

73.  The doctrine establishes, in a uniform way, that the perpetration of the Crime of Influence Peddling is consummated with the reception of the donation[13], which has to be delivered by the buyer of the influence.

74.  In this regard, the buyer of the influence has a criminally relevant behavior[14] since his contribution (which is not harmless) enables the consummation of the Crime of Influence Peddling; hence, inasmuch as it participates in damaging the legally protected right, it necessarily participates in the crime.

75.  The position of this Attorney's Office is that the accessory participation thesis regarding the criminal act, as the dogmatic base of the criminal participation is the most adequate legal base; in this regard, the criminally relevant participation of a person who does not seek the influence but who buys it based on a previous offer, would respond as an accomplice.

---

[13]    Fidel ROJAS VARGAS, Crimes against Public Administration *(Delitos contra la Administración Pública)*. Grijley. 4th Edition, Lima 2007. Page 799.  José Leandro REAÑO PESCHIERA, in Forms of intervention in the crimes of embezzlement and influence peddling. Ed. Jurista. Lima, 2010. Pages 75 et seq

[14]    Matter broadly examined in Plenary Agreement 03-2015.

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net      web: www.lexitrans.net

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP No. 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3238

76. In view of the foregoing, Jorge Henrique SIMOES BARATA, himself, has recognized that from 2006 to 2010, his principal made payments to the person designated by Alejandro TOLEDO MANRIQUE. In this regard, being the buyer of the influence, he would have the condition of accomplice in the charged crime.

> **JOSEF ARIEH MAIMAN RAPAPORT, SUSPECT UNDER INVESTIGATION**

**a. Legal Criminal Charges in the Crime of Money laundering**

**§ 1. Money laundering charges against Josef Arieh MAIMAN RAPAPORT**

77. Specifically, the charges against Josef Arieh MAIMAN RAPAPORT for the alleged perpetration of the crime of money laundering rest upon having facilitated his co-charged, Alejandro TOLEDO MANRIQUE with the use of several bank accounts of his offshore companies (Trailbridge Ltd., Warbury and Co., Merhav Overseas Limited, and others) as well as his actual corporate structures (acts of conversion) in order to perform complex financial operations for a total amount of approximately US$ 9'626,010 (Nine Million Six Hundred and Twenty-six Thousand and Ten US Dollars) (acts of transfer) aimed at completing a first disguise or concealment

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3239

to channel such funds to other destinations.

## § 2. Matching facts to the defined crime of Money laundering

78. Clearly, the active subject is represented by Josef Arieh MAIMAN RAPAPORT, as he also had the functional mastery of the fact. In the second place, the "acts of conversion" (placement stage) are represented both by the facilitation of his offshore companies and bank accounts to Alejandro TOLEDO, that is, insertion of the bribes paid into the legal, economic and financial circuit, which took place from 2006 to 2010; while the "acts of transfer" (layering stage) are configured by all the subsequent acts charged. In the third place, it is relevant to establish that the object of the money laundering crime is represented by the money that the company Odebrecht was paying as part of the bribe that Alejandro TOLEDO had demanded in exchange for favoring it in public bidding processes, and which added to an approximate amount of US\$ 9'626,010 (Nine Million Six Hundred and Twenty-six Thousand and Ten US Dollars).

79. In connection with the foregoing, the subjective characterization of the crime has two substantial elements that also concur here directly. The first one, fraud, is materialized with knowledge of the illegal origin and destination of the money

María del Carmen Pizarro Sabogal
CTP Nº 0051

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3240

(corruption). The second one, the transcendent internal tendency, is configured precisely by his intention to avoid the identification of his criminal connection, which in this specific case is evidenced by the fact that he evaded the controls of the money laundering prevention system.

## V.  IDENTIFICATION OF THE PARTIES TO THE ACTION

**PARTIES CHARGED:**

| | Name | **ALEJANDRO TOLEDO MANRIQUE** |
|---|---|---|
| 1 | National ID Card (DNI) | 08774976 |
| | Place of Birth | Cabana – Pallasca – Ancash |
| | Sex | Male |
| | Marital Status | Married |
| | Date of Birth | March 28, 1945 |
| | Parents' names | Anatolio and Margarita |
| | Actual place of residence | Pasaje Los Olivos 185, Urb. Camacho, La Molina |

| | Name | **JORGE HENRIQUE SIMOES BARATA** |
|---|---|---|
| 2 | Alien Card | 000317457 |
| | Place of Birth | Salvador de Bahia, Brazil |
| | Sex | Male |
| | Marital Status | Married |
| | Registered domicile for purpose of | Calle Luis Felipe Villarán 385 – San Isidro |

María del Carmen Pizarro Sabogal
CTP N° 0051

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3241

| | | |
|---|---|---|
| | process | |

| | | |
|---|---|---|
| 3 | Name | **JOSEF ARIEH MAIMAN RAPAPORT** |
| | National ID Card (DNI) | 06534748 |
| | Place of Birth | Berlin |
| | Sex | Male |
| | Marital Status | Married |
| | Date of Birth | February 8, 1946 |
| | Parents' names | Israel and Eslira |
| | Actual place of residence | Hanasi 112 Herzliya Pituach |

**THE VICTIM:**

The State, represented by the Solicitor General Specialized in Corruption Matters, with domicile for purpose of process at Av. 28 de Julio N° 215, district of Miraflores.

**VII. CONVICTION ELEMENTS THAT SUPPORT THE CHARGES**

The conviction elements that support the charges are the following:

1. Copy of the Minutes containing the pertinent part of the statement of the Effective Collaborator Jorge Henrique SIMOES BARATA.

2. Certificate dated February 1, 2017 from the Attorney General's Office that identifies

Maria del Carmen Pizarro Sabogal
CTP N° 0051

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3242

information on the web in connection with the attendance and participation of Alejandro TOLEDO MANRIQUE at the 18th Summit Meeting of the Rio Group held in Rio de Janeiro (Brazil) on November 4 and 5, 2004.

3. Migratory data of Jorge Henrique SIMOES BARATA, Alejandro TOLEDO MANRIQUE, Avraham DAN ON and Josef Arieh MAIMAN RAPAPORT.

4. Supreme Resolution 360-2004-PCM, dated November 2, 2004 that designates the Delegation that will accompany the President of the Republic Alejandro TOLEDO MANRIQUE to the Rio Summit in November 2004, showing the name Avraham Dan On, Security Advisor to the President.

5. Inquiry on the Taxpayer ID (RUC) of the company Merhav Perú SAC in liquidation, with principal place of business at Calle Independencia N°1161 (altura cuadra 41 Av. Arequipa) Miraflores.

6. Executive Summary 01-2004-IIRSA Sur, dated December 2, 2004 establishing the incorporation of Proyecto Corredor Vial Interoceánico Perú Brasil - IIRSA Sur (IIRSA Sur Inter-Ocean Highway Project) to the private investment promotion process.

7. Minutes of Session 87 of the Board of Directors of Proinversión, held in the premises of the House of Government on December 22, 2004, where the approval of the Promotion Plan for the IIRSA Sur Inter-Ocean Highway Project was discussed.

8. Supreme Order 022-2005-EF, dated February 9, 2005, whereby the sections included in the concession of

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net    web: www.lexitrans.net

María del Carmen Pizarro Sabogal
CTP N° 0051

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3243

the above-mentioned Project were exempted from the application of the regulations of the National System for Public Investment (SNIP) regarding the pre-investment stage.

9. Minutes of the opening of envelope 3 and awarding of contract for sections 2 and 3 of the Inter-Ocean Highway (Interoceánica Sur) dated June 23, 2005.

10. Testimony of former Deputy Comptroller Rosa Elizabeth URBINA MANCILLA.

11. Official Letter 262-2005-CG/VC, dated August 3, 2005

12. Testimony of José Javier ORTIZ RIVERA, in his capacity as former Minister of Transportation and Communications.

13. Concession Contracts for sections 2 and 3 of the Inter-Ocean Highway (Interoceánica Sur) dated August 4, 2005.

14. Attorney General's Certificate dated February 1, 2017 acknowledging receipt of documents submitted by Odebrecht, showing operations performed to several companies of the business group headed by Josef MAIMAN.

15. Law 28670 (Law that declares different investment projects of public need and national interest) published on January 26, 2006.

16. Minority Report from the Pari Commission.

17. Special Report 117-2011-CG/OEA-EE, dated April 15, 2011, issued by the Office of the Comptroller General of the Republic.

18. Authenticated copies sent by the 16th Court of

MARÍA DEL CARMEN PIZARRO SABOGAL
Certified Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3244

Limited Jurisdiction in and for Lima, pertaining to Docket 7091-2014 (Ecoteva Case) consisting of the Criminal Complaint, Order to Initiate Process, Statements of Alejandro TOLEDO MANRIQUE and Josef MAIMAN RAPAPORT.

19. Order 01, dated October 4, 2016 to open preliminary investigation corresponding to case 14-2016 before this Attorney's Office against Josef MAIMAN RAPAPORT et al, for the crime of money laundering.

20. Translated Agreement between the Department of Justice of the United States of America and the companies Odebrecht and Braskem.

## VIII. DECISION OF THE PROSECUTOR

Based on the above-described grounds, the Corporate Supra-district Attorney's Office Specialized in Corruption of Government Officials – **Special Team** – in accordance with the authorities conferred by the Institutional Law of the Government Attorney General's Office – Executive Order No. 052 – and in line with articles 336 and 337 of the Criminal Procedural Code, **PROVIDES:**

**ONE: TO EXTEND THE FORMALIZATION AND CONTINUATION OF THE PRELIMINARY INVESTIGATION** into:

▪ **Alejandro TOLEDO MANRIQUE,** as **PERPETRATOR** of the crime against public administration – **INFLUENCE PEDDLING** as defined **in the second paragraph, article**

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net      web: www.lexitrans.net

María del Carmen Pizarro Sabogal
CTP N° 0051

MARÍA DEL CARMEN PIZARRO SABOGAL
CTP No. 0051
Licensed Translator

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3245

400 of the Criminal Code, and for the crime of **MONEY LAUNDERING**, both to the detriment of the **PERUVIAN STATE**.

- **Jorge Henrique SIMOES BARATA,** as **PRINCIPAL ACCOMPLICE** of the crime against public administration - **INFLUENCE PEDDLING** as defined **in the second paragraph, article 400 of the Criminal Code,** and for the crime of MONEY LAUNDERING, both to the detriment of the **PERUVIAN STATE.**

- **Josef Arieh MAIMAN RAPAPORT** as **PERPETRATOR** of the crime of **MONEY LAUNDERING** to the detriment of the **PERUVIAN STATE.**

**TWO:** Perform the following proceedings in accordance with article 336, number 2, item d) of the Criminal Procedural Code:

1. Submit request for international judicial cooperation to the United Kingdom, United States, Brazil and any other applicable country, in order to access the banking information of the operations under investigation.

2. Coordinate with the General Comptroller's Office of the Republic the execution of any diligences that may be required according to the nature of public contracting in the Peru-Brazil Inter-ocean Highway Project - IIRSA Sur, Sections 2 and 3.

3. Receive, according to the Prosecutor's strategy and agenda, the testimony of the Special Committee members, Board members of Proinversión and all other

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net    web: www.lexitrans.net

María del Carmen Pizarro Sabogal
CTP N° 0051

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3246

officials who participated in the Peru-Brazil Inter-ocean Highway Project – IIRSA Sur, Sections 2 and 3.

4. Submit request for international judicial cooperation to Brazil to request the migratory movements (entry and departure records) of Josef Arieh MAIMAN RAPAPORT, Gideon WEINSTEIN and Sabi SAYLAN, for the year 2004.

5. Submit request for international judicial cooperation to Brazil, to request information regarding accommodations, including registration card of Alejandro TOLEDO MANRIQUE, Josef Arieh MAIMAN RAPAPORT, Gideon WEINSTEIN, Sabi SAYLAN and Avraham DAN ON, kept by the Copacabana Palace and Marriot hotels located in Avenida Atlantica, both in Rio de Janeiro, during November 2004.

6. Request the Secretary General´s Office of the Presidency of the Republic the visitors' record of the Government House between 2004 and 2006.

7. The voluntary statements rendered by the imputed parties, according to the prosecutor's strategy and agenda, once the necessary conviction elements have been collected.

8. Obtain the criminal and legal records of the imputed parties.

9. Other pertinent and necessary proceedings to reach clarification of the facts.

**THREE:** To serve notice of this Decision to the Attorney General's Office to the Preliminary Investigation Court in accordance with the provisions set forth in Sections

María del Carmen Pizarro Sabogal
CTP Nº 0051

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net     web: www.lexitrans.net

CERTIFIED TRANSLATION No. 0294.4-2018

Page 3247

3 and 336, paragraph 3 of the Criminal Procedural Code without prejudice of serving notice thereto to the defendants and to the Solicitor with Jurisdiction over Crimes of Corruption of Government Officials.

**FOUR**: The address for service of process of this District Attorney's Office is established at Av. Abancay No. 491, Mezanine, Cercado de Lima, Lima, electronic register of the judiciary No.48958.

**FIVE**: The Government Attorney General's Office has reported that the issuance of a provisional arrest order is being processed regarding both defendants, Alejandro TOLEDO MANRIQUE and Josef Arieh MAIMAN RAPAPORT

To be recorded and notified.

[signed]  Hamilton CASTRO TRIGOSO
          District Attorney
          Corporate Supra-District Attorney's Office
          Specialized in Crimes of Corruption of
          Officials – Special Team / round seal

María del Carmen Pizarro Sabogal
CTP Nº 0051

Germán Schreiber 278, San Isidro
Telephone: 2080860
e-mail: lexitrans@lexitrans.net    web: www.lexitrans.net