JODI H. LINKER
Federal Public Defender
MARA K. GOLDMAN
GRAHAM ARCHER
Assistant Federal Public Defenders
55 South Market Street, Suite 820
San Jose, CA 95113
Telephone:     (408) 291-7753
Facsimile:     (408) 291-7399
Email:         Mara_Goldman@fd.org

Counsel for Petitioner TOLEDO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEJANDRO TOLEDO MANRIQUE,<br><br>Petitioner,<br><br>v.<br><br>DONALD O'KEEFE,<br><br>Respondent. | Case No. 21-cv-08395-LB<br><br>**PETITIONER'S MOTION TO STAY EXTRADITION PENDING APPEAL**<br><br>Court:          Courtroom C, 15th Floor<br>Hearing Date:   June 9, 2022<br>Hearing Time:   9:30 a.m. |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................2

FACTUAL AND PROCEDURAL HISTORY ......................................................................2

ARGUMENT .........................................................................................................................6

I.   Without a Stay, Dr. Toledo Will Suffer Irreparable Harm ..........................................7

    A.   Dr. Toledo Will Suffer Irreparable Harm Because His Appeal Will
        Become Moot ..................................................................................................7

    B.   Dr. Toledo Will Suffer Irreparable Harm Because He Will Spend Years in
        Dangerous Prison Conditions While He Waits to Be Formally Charged ......8

II.  Dr. Toledo's Appeal Raises Serious Legal Questions and There Is A Probability of
     Success on the Merits ..................................................................................................9

III. Granting a Stay Is in the Public Interest and Will Not Harm the Other Parties .......11

CONCLUSION ...................................................................................................................13

# TABLE OF AUTHORITIES

**Federal Cases**

*Aguasvivas v. Pompeo*,
    984 F.3d 1047 (1st Cir. 2021) .................................................................................. 10, 11

*Artukovic v. Rison*,
    784 F.2d 1354 (9th Cir. 1986) ............................................................................................ 7

*Emami v. U.S. Dist. Ct. for N. Dist. of Cal.*,
    834 F.2d 1444 (9th Cir. 1987) .......................................................................................... 10

*Extradition of Strunk*,
    293 F. Supp. 2d 908 (E.D. Cal. 2003) .............................................................................. 11

*In re Chavez*,
    408 F. Supp. 2d 908 (N.D. Cal. 2005) .............................................................................. 11

*In re Extradition of Hilton,*
    2013 WL 3282864 (D. Mass. June 26, 2013) ............................................................. 6, 10

*In re Extradition of Sindona*,
    450 F. Supp. 672 (S.D.N.Y. 1978) .................................................................................. 11

*In re World Trade Ctr. Disaster Site Litig.*,
    503 F.3d 167 (2d Cir. 2007) ........................................................................................... 6, 7

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) ............................................................................... 6, 7, 9, 10

*Martinez v. United States,*
    2014 WL 4446924 (M.D. Tenn. Sept. 9, 2014) ......................................................... *passim*

*Meza v. U.S. Atty. Gen.*,
    693 F.3d 1350 (11th Cr. 2012) .......................................................................................... 7

*Mohammed v. Reno*,
    309 F.3d 95 (2d Cir. 2002) .............................................................................................. 10

*Nezirovic v. Holt,*
    2014 WL 3058571 (W.D. Va. July 7, 2014) ............................................................... 7, 12

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................................... 6, 8, 12

*Noriega v. Pastrana,*
    2008 WL 331394 (S.D. Fla. Jan. 31, 2008) ................................................................ 7, 12

*Ntakirutimana v. Reno*,
    184 F.3d 419 (5th Cir. 1999) ............................................................................................. 7

*Sacirbey v. Guccione*,
    589 F.3d 52 (2d Cir. 2009) .................................................................................................. 10

*Santos v. Thomas*,
    830 F.3d 987 (9th Cir. 2016) ................................................................................................ 11

*Scripps-Howard Radio, Inc. v. FCC*,
    316 U.S. 4 (1942) ................................................................................................................... 6

*Then v. Melendez*,
    92 F.3d 851 (9th Cir. 1996) ................................................................................................... 7

*Ye Gon v. Holt,* ,
    2014 WL 202112 (W.D. Va. Jan. 17, 2014) ........................................................................ 7

*Yoo v. United States,*
    2021 WL 6100609 (S.D.N.Y. Nov. 16, 2021) ..................................................... 6, 7, 10, 12

TO: RESPONDENT DONALD O'KEEFE, BY AND THROUGH DOJ TRIAL ATTORNEY REBECCA HACISKI AND ASSISTANT UNITED STATES ATTORNEY KYLE WALDINGER; AND THE CLERK OF THE ABOVE-ENTITLED COURT

PLEASE TAKE NOTICE that on Thursday, June 9, 2022, at 9:30 a.m., or as soon thereafter as the matter may be heard before the Honorable Laurel Beeler, petitioner Alejandro Toledo will move the Court for an order staying Dr. Toledo's extradition pending his appeal to the Ninth Circuit from the Court's denial of his petition for a writ of habeas corpus.  In the alternative, if the Court declines to stay the extradition, Dr. Toledo moves the Court for temporary stay to enable him to seek a stay in the Ninth Circuit Court of Appeals.

This motion shall be made pursuant to the Court's inherent powers and Rule 62(c) of the Federal Rules of Civil Procedure.  It shall be made on the grounds that Dr. Toledo has a substantial case on the merits and he will suffer irreparable injury in the absence of a stay, while the issuance of a stay will not substantially injure the other parties or the public interest.

This motion shall be based upon this notice of motion and motion, the attached memorandum of points and authorities, the case record in both this case and the underlying extradition case, and such evidence and argument as may be presented at a hearing on this matter.

Dated:     April 29, 2022

Respectfully submitted,

JODI H. LINKER
Federal Public Defender
Northern District of California

          /S
MARA K. GOLDMAN
GRAHAM ARCHER
Assistant Federal Public Defenders

# INTRODUCTION

The Republic of Peru seeks to extradite former president Alejandro Toledo in connection with allegations of collusion and money laundering. The Honorable Thomas S. Hixson certified the extradition on September 28, 2021. XR ECF 188. Dr. Toledo challenged the certification by filing a petition for a writ of habeas corpus, ECF 1, which this Court denied on April 22, 2022, ECF 17.

Dr. Toledo intends to appeal the denial of his habeas petition to the Ninth Circuit Court of Appeals. Unless this Court stays its order pending that appeal, however, Dr. Toledo will suffer irreparable harm because he will be extradited to Peru, rendering his appeal moot before it can be heard. He will be further harmed because, in Peru, he will likely be subjected to years of pre-charge detention in an overcrowded prison that lacks proper sanitation and fails to provide adequate nutrition and health care. The situation is particularly dire because Dr. Toledo is a 76-year-old man in poor health who is at high risk of dying if he contracts COVID-19.

Dr. Toledo has raised viable claims that the Ninth Circuit will review de novo, including at least one claim that is a question of first impression. Both Dr. Toledo and the public have an interest in enabling him to litigate these claims. Finally, neither the United States nor Peru will suffer any significant harm from a stay; given the lack of urgency with which both countries have proceeded, a relatively brief delay to allow Dr. Toledo to appeal will have little impact on either country.

For all of these reasons, Dr. Toledo respectfully requests that the Court stay his extradition pending resolution of his appeal.

# FACTUAL AND PROCEDURAL HISTORY

In 2001, Alejandro Toledo was elected President of Peru, defeating the dictator Alberto Fujimori. Dr. Toledo's election was the beginning of what the U.S. State Department characterized as "a process of democratic transformation." *See* U.S. State Dept., *Country Reports on Human Rights Practices: Peru* (Mar. 4, 2002).[1] In particular, Dr. Toledo worked to reform the judicial system, which the State Department had long criticized as "corrupt and inefficient." *See id.* His efforts to expose Fujimori's wrongdoing ultimately resulted in Fujimori's conviction for human

---

[1] Available at https://2009-2017.state.gov/drl/rls/hrrpt/2001/wha/8263.htm.

PETITIONER'S MOTION TO STAY EXTRADITION
NO. 21-CV-08395-LB

2

rights violations, crimes against humanity, murder, and kidnapping.[2]

In addition to restoring democracy to Peru, Dr. Toledo was committed to improving the economy and reducing poverty. *See* Ronald Bruce St. John, *Toledo's Peru: Vision and Reality* (2010) at 54-56. The cornerstone of his plan was the construction of the Interoceanic Highway – a cross-continental highway that would stretch from the Atlantic Ocean to the Pacific Ocean. *See id.* at 50-51. Dr. Toledo believed that the Interoceanic Highway would revitalize the economy and expand opportunity for poor and indigenous South Americans. *See* "Toledo Sworn In, Vows to Aid Peru's Poor," *L.A. Times*, July 29, 2001.[3] He was far from alone in this belief. In April of 2004, the Congress declared the Interoceanic Highway Project a "national priority." *See* Extradition Request ("ER") at 857-58.

Dr. Toledo completed his presidential term in 2006. Eleven years later, Peruvian prosecutors began investigating allegations that Odebrecht, a Brazilian construction behemoth, had bribed Dr. Toledo to secure favorable treatment in the bidding process for the Interoceanic Highway Project. In Peru, a criminal case consists of three distinct stages: (1) the preliminary or investigative phase, during which the prosecutor gathers evidence and determines whether to seek charges; (2) the intermediate or examination phase, during which the court holds a preliminary hearing to determine whether the prosecutor's request for formal charges should be granted; and (3) the trial. *See* ECF 1-3, Declaration of Moisés Aguirre Lucero, at ¶¶ 3-6; ECF 1-9, Declaration of Zully Robles Apumayta, at ¶ 3. In Dr. Toledo's case, the first phase commenced on February 3, 2017, when Peruvian prosecutors initiated their preliminary investigation of Dr. Toledo.

On February 9, 2017, the Peruvian court granted the prosecutors' request for an order an of *prisión preventiva* (preventive imprisonment) for Dr. Toledo. Preventive imprisonment, which is widely used in Peru, allows an individual to be imprisoned for years before he or she has been charged with a crime. *See* Simeon Tegel, "Ex-President's Suicide Brings More Criticism of Peru's

---

[2] In 2017, former President Pedro Pablo Kuczynski pardoned Fujimori. The following year, the pardon was nullified on the ground that it was politically motivated. On March 17, 2022, however, Peru's highest court reinstated the pardon. *See* Mitra Taj, "Peru's Top Court Restores Pardon for Ex-President," *N.Y. Times*, Mar. 17, 2022, available at https://www.nytimes.com/2022/03/17/world/americas/peru-alberto-fujimori.html.

[3] Available at https://www.latimes.com/archives/la-xpm-2001-jul-29-mn-27905-story.html.

Pretrial Detentions," *Washington Post*, Apr. 20, 2019.[4]

Also in February of 2017, Peru submitted its initial extradition request to the United States. At the time, no charges had been filed against Dr. Toledo and the case in Peru remained in the preliminary investigation stage. Dr. Toledo, who was living openly in the Bay Area, was aware of the request, which received extensive coverage in both the Peruvian and the international press. The United States took no action on Peru's request.

On March 25, 2018, Peru submitted another extradition request to the United States. The Peruvian case was still in the preliminary investigation phase and Dr. Toledo still had not been charged with a crime. For over a year, the United States took no action on the request. It was not until July of 2019 that the United States filed a complaint against Dr. Toledo and obtained a warrant for his arrest in connection with Peru's request for extradition. *See* ECF 1-14, Criminal Complaint. The Complaint alleged that in 2004 and 2005, Dr. Toledo had engaged in collusion by agreeing, though intermediaries, to give Odebrecht favorable treatment in the Interoceanic Highway bidding process in return for $35 million in bribes. The Complaint also alleged that Dr. Toledo engaged in laundering the bribery payments. The Complaint contended that Dr. Toledo had received more than $16 million of bribe money, but this allegation has been definitively refuted. It is now evident that all of the bribe money went to Josef Maiman, who was allowed to keep more than $20 million of bribery payments as part of his cooperation agreement with Peru. *See* ECF 1-15, Judgment of Effective Collaboration.[5]

On July 10, 2020, Dr. Toledo moved for an order denying Peru's extradition request based on its failure to comply with the requirements of the U.S.-Peru extradition treaty. Dr. Toledo argued that the treaty requires formal charges and the production of a copy of the formal charging document. In a September 4, 2020 order, Judge Hixson agreed that Peru had failed to formally charge Dr. Toledo

---

[4] Available at https://www.washingtonpost.com/world/theamericas/suicide-of-fomer-president-brings-criticism-of-perus-pretrial-detentions/2019/04/18/.

[5] In its Order Denying Petition for Writ of Habeas Corpus, the Court refers to Dr. Toledo's "admitted acceptance of bribe money." *See* ECF 17 at 2:10-11; *see also id.* at 8. Although Dr. Toledo now realizes Josef Maiman's $500,000 loan came from the bribe money that Odebrecht paid Maiman, Dr. Toledo did not know this at the time, nor did he have any reason to suspect it, since he was unaware of the bribery scheme.

with a crime, but concluded that formal charges were not required under the treaty. *See* ECF 1-8, Order re: Motion to Deny Extradition Request.

On July 8, 2021, Dr. Toledo moved for an order denying extradition based on lack of probable cause. On September 28, 2021, Judge Hixson denied the motion and issue a certification of extradition. *See* ECF 1-13, Certification of Extraditability to the Secretary of State. The Court recognized that "[t]he case against Toledo is not airtight," and that "[t]here are contradictions between the two principal witnesses against him and inconsistencies in each witness's statements over time," but concluded that there was probable cause, and that Dr. Toledo would have the opportunity to challenge the credibility of those witnesses at trial. *See id.*

Between March of 2017 and August of 2020, Peruvian prosecutors obtained numerous extensions of the time in which to complete their preliminary investigation. In August of 2020, the prosecutors submitted a request for formal charges (the *acusacíon fiscal*) to Judge Concepción Carhuancho for his review. *See* ECF 1-7, Letter from Gonzalo Bonifaz. In September of 2021, Judge Concepción Carhuancho announced that his review of the *acusacíon fiscal* would begin on October 21, 2021. This review, which must be completed before formal charges can be brought, is expected to take "one or two years." *See* "Alejandro Toledo: Judicial Branch Will Begin Prosecution Control on October 21, for the Odebrecht Case," *Gestión*, Sept. 29, 2021.[6]

On October 28, 2021, Dr. Toledo filed a petition for a writ of habeas corpus, arguing: (1) the U.S.-Peru extradition treaty requires formal charges as a prerequisite for extradition and it is undisputed that Dr. Toledo has never been formally charged; (2) Peru has failed to comply with the treaty's requirement to produce a copy of the charging document; (3) the extradition court erroneous refused to consider explanatory evidence; and (4) there is no probable cause to believe that Dr. Toledo engaged in collusion or money laundering. *See* ECF 1. On April 22, 2022, this Court denied the petition. ECF 17.

---

[6] Available at https://gestion.pe.peru/politica/alejandro-toledo-poder-judicial-iniciara-conrol-de-acusacion-el-21-octubre-por-caso-odebrecht-nndc-noticia/.

# ARGUMENT

This Court has the inherent power to stay an order pending appellate review. *See In re Extradition of Hilton*, No. 13-7043-JCB, 2013 WL 3282864, *2 (D. Mass. June 26, 2013) (citing *Nken v. Holder*, 556 U.S. 418, 426 (2009)). As the Supreme Court explained in *Nken*: "It takes time to decide a case on appeal. Sometimes a little; sometimes a lot ... and if a court takes the time it needs, the court's decision may in some cases come too late for the party seeking review." *Nken*, 556 U.S. at 421. For this reason, "it 'has always been held, . . . that as a part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal.'" *Id.* (quoting *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9-10 (1942)).

In *Nken*, the Court identified four factors a court must consider in deciding whether to grant a stay: (1) "whether the stay applicant has made a strong showing that he is likely to succeed on the merits"; (2) "whether the applicant will be irreparably injured absent a stay"; (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding"; and (4) "where the public interest lies." *Id.* at 426 (citation and internal quotations omitted).[7]

In the Ninth Circuit, the moving party must show that "irreparable harm is probable and either: (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships tips sharply in the petitioner's favor." *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (citation omitted). Demonstrating a probability of irreparable harm is a threshold requirement; "stays must be denied to all petitioners who [do] not meet the applicable irreparable harm threshold, regardless of their showing on the other stay factors." *Id.* at 965 (citation omitted). Once that threshold is met, "likelihood of success and irreparable injury are the most critical factors, and 'the degree to which a factor must be present varies with the strength of the other factors, meaning that more of one factor excuses less of the other.'" *Yoo v. United States*, 21-cv-6184 (CS), 2021 WL 6100609, *1 (S.D.N.Y. Nov. 16, 2021) (citing *Nken*, 556 U.S. at 434, and quoting *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007)).

---

[7] When the government is the opposing party, the third and fourth factors merge. *See id.* at 434.

Applying these factors, numerous district and appellate courts have stayed extradition proceedings pending resolution of petitioners' appeals. *See, e.g., id.* at *3; *Martinez v. United States*, No. 14-cv-00174, 2014 WL 4446924 (M.D. Tenn. Sept. 9, 2014); *Nezirovic v. Holt*, No. 7:13cv428, 2014 WL 3058571 (W.D. Va. July 7, 2014); *Ye Gon v. Holt*, No. 11-cv-00575, 2014 WL 202112 (W.D. Va. Jan. 17, 2014); *Meza v. U.S. Atty. Gen.*, 693 F.3d 1350, 1356 (11th Cr. 2012); *Noriega v. Pastrana*, No. 07-cv-22916-PHC, 2008 WL 331394 (S.D. Fla. Jan. 31, 2008); *Ntakirutimana v. Reno*, 184 F.3d 419, 423 n.7 (5th Cir. 1999); *Then v. Melendez*, 92 F.3d 851, 853 n.1 (9th Cir. 1996). Because, in the present case, the factors weigh in Dr. Toledo's favor, this Court should join these courts and grant a stay of extradition pending appeal.

## I. Without a Stay, Dr. Toledo Will Suffer Irreparable Harm

To obtain a stay, Dr. Toledo must "demonstrate that irreparable harm is probable if the stay is not granted," meaning that he must show that "irreparable harm is the more probable or likely outcome." *Leiva-Perez*, 640 F.3d at 968 (citations omitted). In this case, there is little question that failing to stay the extradition will result in irreparable harm.

### A. Dr. Toledo Will Suffer Irreparable Harm Because His Appeal Will Become Moot

Unless the extradition is stayed, Dr. Toledo will be extradited to Peru before his appeal can be heard, rendering the appeal moot. *See Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986). Courts have repeatedly recognized that the inability to obtain appellate review constitutes an "irreparable injury." *Id.*; *see also, e.g., Yoo*, 2021 WL 6100609 at *2 (noting that extradition "would unquestionably cause irreparable injury by mooting Petitioner's appeal before it can be heard," and concluding that "this factor weighs strongly in favor of a stay"); *Noriega*, 2008 WL 3058571 at *2 (concluding that failure to grant a stay would result in irreparable harm because "it is obvious that Noriega will be extradited to France before his appeal is resolved," meaning that his appeal "will effectively be mooted" and that even if he were to prevail on appeal, "it would be a Pyrrhic victory"); *Nezirovic*, 2014 WL 3058571 at *2 (concluding that the likelihood that extradition would render appeal moot "compels the court to stay the extradition pending appeal"); *Ye Gon*, 2014 WL 202112 at *1 ("[E]xtradition while his appeal is pending would effectively void Petitioner's ability to seek meaningful appellate review of this Court's decision and thus would result in irreparable harm.");

PETITIONER'S MOTION TO STAY EXTRADITION
NO. 21-CV-08395-LB

7

*Martinez*, 2014 WL 4446924 at *4 (concluding that the fact that the petitioner "will likely never have the opportunity to litigate his arguments before the court of appeals certainly constitutes irreparable harm").

All of these decisions are consistent with the Supreme Court's recognition in *Nken* that "[t]he choice for a reviewing court should not be justice on the fly or participate in what may be an idle ceremony. The ability to grant interim relief is accordingly not simply an historic procedure for preserving rights during the pendency of an appeal, but also a means of ensuring that appellate courts can responsibly fulfill their role in the judicial process." *Nken*, 556 U.S. at 427 (internal quotations and citations omitted).

### B. Dr. Toledo Will Suffer Irreparable Harm Because He Will Spend Years in Dangerous Prison Conditions While He Waits to Be Formally Charged

As noted above, Peru's system of preventive detention allows prosecutors to keep an individual in prison for up to three years without having been formally charged with any crime, "a term unthinkable in many democracies, even for suspects facing overwhelming evidence of the most heinous crimes." *See* Tegel, *supra*. The Inter-American Commission on Human Rights (IACHR) has recognized that the "arbitrary and illegal use of pretrial detention is a chronic problem in the region," and has identified the "non-exceptional use of this measure" as one of the region's "most serious and widespread problems ... in regard to the respect for and guarantee of the rights of persons deprived of liberty." *See* "IACHR Presents Report on Measures Aimed at Reducing the Use of Pretrial Detention," Sept. 7, 2017.[8] In the present case, there is no doubt that Dr. Toledo would spend years in prison waiting to be charged. There is an outstanding order for his preventive detention and no charges are expected until the end of 2022 or even late 2023.

There is no justification for Dr. Toledo to spend that time in prison, particularly given the conditions of Peru's prisons. *See Martinez*, 2014 WL 4446924 at *4 (concluding that the fact that the petitioner "would be housed in a facility characterized as one of the worst in the country, in a country with overall poor prison conditions as documented by the U.S. State Department, constitutes irreparable harm to him"). According to the U.S. State Department's most recent report, prison

---

[8] Available at https://www.oas.org/en/iachr/mediacenter/PReleases/2017/136.asp.

PETITIONER'S MOTION TO STAY EXTRADITION
NO. 21-CV-08395-LB

8

conditions in Peru are "generally harsh due to overcrowding, improper sanitation, inadequate nutrition, poor health care, and corruption among guards." *See* U.S. State Dept., *Country Reports on Human Rights Practices for 2021: Peru* (Feb. 2022),[9] at 3. "Many inmates had only intermittent access to potable water. Bathing facilities were often inadequate, kitchen facilities unhygienic, and prisoners often slept in hallways and common areas due to a lack of cell space." *Id.* at 4. Moreover, "[m]ost prisons provided limited access to medical care, which resulted in delayed diagnoses of illnesses, a situation aggravated by the COVID-19 pandemic. *Id.* In addition, a research study found that "tuberculosis, HIV, and AIDS remained at levels high enough to constitute a potential threat to the broader public health." *Id.* at 4-5.

These conditions would be troubling for any inmate, but they are unacceptably dangerous for a man like Dr. Toledo, a 76-year-old in poor health. Recently, a traumatic fall resulted in a complex shoulder fracture requiring major surgery, replacement of the joint with a prosthesis, and a carefully monitored regimen of pain management and physical therapy to attempt to regain function in his right upper extremity. He has also suffered considerable nerve damage, making it difficult for him to use his right hand. *See* XR ECF 198, Order Denying Motion to Revoke Bail and Remand to Custody. Because of his age and medical condition, Dr. Toledo is particularly vulnerable to contracting a fatal case of COVID-19. He has done everything in his power to avoid infection, including vaccination, but the risk of infection will increase exponentially if he is forced to endure a prolonged imprisonment in Peru, the country with the highest rate in the world of COVID-19 deaths. *See* Johns Hopkins Coronavirus Resource Center, *Mortality Analyses*.[10]

## II. Dr. Toledo's Appeal Raises Serious Legal Questions and There Is a Probability of Success on the Merits

To obtain a stay, the petitioner must show "either 'a probability of success on the merits' or that 'serious legal questions are raised,' depending on the strength of the petitioner's showing on the other stay factors." *Leiva-Perez*, 640 F.3d at 967 (citations omitted). As the Ninth Circuit recognized in *Leiva-Perez*, "[t]here are many ways to articulate the minimum quantum of likely success necessary

---

[9] Available at state.gov/wp-content/uploads/2022/02/313615_Peru_2021-human-rights-report.pdf.
[10] Available at coronavirus.jhu.edu/data/mortality.

PETITIONER'S MOTION TO STAY EXTRADITION
NO. 21-CV-08395-LB

to justify a stay – be it a 'reasonable probability' or 'fair prospect,' ... 'a substantial case on the merits' ... [or] that 'serious legal questions are raised.'" *Id.* at 967 (citations omitted). The Court concluded: "We think these formulations are essentially interchangeable, and that none of them demand a showing that success is more likely than not." *Id.* at 967-68.

Several courts have recognized the "conceptual difficulty" of assessing the likelihood that their own decisions will be overturned on appeal. As one district court judge explained: "Obviously, we think an appeal will probably fail; we have reviewed our opinion and stand by it. Had we thought an appeal would be successful, we would not have ruled as we did in the first place." *Hilton*, 2013 WL 3282864 at *2; *see also Yoo*, 2021 WL 6100609 at *1 (explaining that while the district court "naturally believes that its resolution of this issue is correct, in this context Petitioner need only show 'a substantial possibility, although less than a likelihood of success' – that is, 'something less than 50 percent'") (quoting *Mohammed v. Reno*, 309 F.3d 95, 101-02 (2d Cir. 2002)).

The present case involves complex and unsettled questions of law. First, Dr. Toledo argues that the U.S.-Peru extradition treaty requires actual charges. This is a question of law that the Ninth Circuit will consider de novo. The Ninth Circuit has never considered the specific question whether a treaty that explicitly requires a charging document necessarily requires that the person sought actually be charged with a crime before he or she can be extradited. *Emami v. U.S. Dist. Ct. for N. Dist. of Cal.*, 834 F.2d 1444 (9th Cir. 1987), does not clearly control. In *Emami*, the Court held that the U.S.-West Germany extradition treaty did not require formal charges, even though the treaty limited extradition to individuals "charged or convicted of" an extraditable offense. *Id.* at 1448. In reaching its conclusion, the Court focused on the fact that the treaty did not include any requirement that the requesting country produce a charging document. *Id.* The *Emami* Court had no occasion to consider the question presented here, namely, whether formal charges are required when the treaty *does* include a requirement that the requesting country produce a charging document. Nor did the *Emami* Court have the benefit of the First Circuit's reasoning in *Aguasvivas v. Pompeo*, 984 F.3d 1047 (1st Cir. 2021), or the Second Circuit's reasoning in *Sacirbey v. Guccione*, 589 F.3d 52 (2d Cir. 2009). The Ninth Circuit should have the opportunity to decide this question.

Dr. Toledo's second argument – that the treaty requires production of the actual charging

document – is a question of first impression in the Ninth Circuit. The extradition court has already made a factual finding that none of the documents provided by Peru qualify as the formal charging document; all that is left for the Ninth Circuit is a legal question that is reviewed de novo. Moreover, the most closely analogous decision – *Aguasvivas* – held that where a treaty requires production of "the document setting forth the charges," this requirement cannot be satisfied by producing a different document. *See Aguasvivas*, 984 F.3d at 1058. There is at least a "fair prospect" that the Ninth Circuit will find *Aguasvivas* applicable and persuasive.

Dr. Toledo's third argument is that the extradition court erroneously excluded explanatory evidence. As numerous courts have recognized, this is an inherently complex legal question because "[t]he distinction between 'contradictory evidence' and 'explanatory evidence' is difficult to articulate." *In re Extradition of Sindona*, 450 F. Supp. 672, 685 (S.D.N.Y. 1978). Courts in this circuit have characterized this legal distinction as "murky," *In re Chavez*, 408 F. Supp. 2d 908, 911 (N.D. Cal. 2005); "metaphysical," *Extradition of Strunk*, 293 F. Supp. 2d 908, 911 (E.D. Cal. 2003); and "easier stated than applied," *Santos v. Thomas*, 830 F.3d 987, 992 (9th Cir. 2016). Dr. Toledo's fourth argument – that there is no probable cause – is intertwined with the third argument since the extradition court might have reached a different conclusion had it properly considered the explanatory evidence Dr. Toledo submitted.

The defense recognizes that this Court has rejected each of these arguments, but Dr. Toledo does not need to persuade this Court that it was mistaken. Even if the chance that he will prevail is less than 50%, this is still enough to warrant a stay. Because this case raises "serious legal questions," a stay is warranted.

### III. Granting a Stay Is in the Public Interest and Will Not Harm the Other Parties

Dr. Toledo recognizes that, as a general matter, the United States has an interest in fulfilling its treaty obligations. But. as several courts have recognized, that interest carries little weight when the United States and the requesting country have demonstrated a lack of urgency. In *Martinez*, for example, Mexico waited over six years to submit an extradition request, and the United States waited over a year to act on that request. *Martinez*, 2014 WL 4446924 at *5. Under the circumstances, the district court concluded that there was no reason to believe that a stay would substantially injure

either country, "given their demonstrated lack of urgency in pursuing this matter." *Id.*  Similarly, in *Noriega*, the court concluded that since the case already had been "pending for many years," a "short delay during the appeal will not, in any meaningful way, harm or otherwise adversely affect France's prosecution of Noriega or the diplomatic relationship between the United States and France." *Noriega*, 2008 WL 331394 at *3.  Courts reached similar conclusions in *Yoo*, 2021 WL 6100609 at *2 (noting that, given the six-year delay between Korea's initial extradition request and the Untied States government's initiation of extradition proceedings, "the public interest in prompt execution of removal orders and international relations is largely neutralized, and in any case is not so urgent that it should outweigh Petitioner's interest in having a full and fair opportunity to litigate his claim"); and *Nezirovic*, 2014 WL 3058571 at *3 (where Bosnia did not submit its extradition request until twenty years after the alleged offense, "[t]he time required to hear Nezirovic's appeal will be a relatively short delay in the decades-long process of bringing Nezirovic before a Bosnian court," and "neither the government nor the public will suffer appreciable injuries by staying Nezirovic's extradition pending his appeal").

As in these cases, the United States and Peru have acted with a decided lack of urgency.  Dr. Toledo is alleged to have commenced an offense that began in 2004 and whose last acts occurred in 2012.  Yet Peru did not even begin its investigation or request extradition until 2017.  The United States, in turn, waited more than two years to act on Peru's request, even though Dr. Toledo was living openly in the Bay Area.  Most significant, though, is the fact that Peru still has not formally charged Dr. Toledo with a crime *ten years* after the end of the alleged offense conduct.

Finally, it is important to recognize that the public has an interest in allowing Dr. Toledo to have a "full, fair opportunity to litigate his claim[s]." *Noriega*, 2008 WL 331394 at *3.  As the district court explained in *Martinez*:

> This country prides itself on the legal process it affords those accused of crimes, even though that legal process takes time to complete.  "The authority to hold an order in abeyance pending review allows an appellate court to act responsibly.  A reviewing court must bring considered judgment to bear on the matter before it, but that cannot always be done quickly enough to afford relief to the party aggrieved by the order under review."

*Martinez*, 2014 WL 4446924 at *5 (quoting *Nken*, 556 U.S. at 415).

**CONCLUSION**

Dr. Toledo will suffer irreparable harm if he is extradited before his appeal can be heard. His case presents serious legal questions and there is a reasonable probability that he will prevail in the Ninth Circuit. Neither Peru nor the United States will be harmed by the relatively brief delay required to litigate this appeal, particularly given their delay in initiating the case. Finally, the public interest will be served by allow Dr. Toledo to obtain a full determination of his legal rights and by allowing the appellate court to take the time necessary to review the case and reach a decision. For all of these reasons, Dr. Toledo respectfully requests that the Court stay his extradition and its Order Denying Petition for Writ of Habeas Corpus pending appeal. In the alternative, Dr. Toledo requests that the Court grant a temporary stay to allow him to seek a stay in the Ninth Circuit Court of Appeals.

Dated:     April 29, 2022                    Respectfully submitted,

                                             JODI H. LINKER
                                             Federal Public Defender
                                             Northern District of California

                                                      /S
                                             MARA K. GOLDMAN
                                             GRAHAM ARCHER
                                             Assistant Federal Public Defenders