STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99439)
Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorney

    450 Golden Gate Ave., 11th Fl.
    San Francisco, California 94102-3495
    Telephone: (415) 436-6830
    Fax: (415) 436-7234
    Email:  Kyle.Waldinger@usdoj.gov

REBECCA A. HACISKI (DCBN 996656)
Acting Associate Director

    Office of International Affairs
    Criminal Division
    U.S. Department of Justice
    1301 New York Avenue NW
    Washington, D.C. 20530
    Telephone: (202) 616-2534
    Fax: (202) 514-0080
    Email:  Rebecca.Haciski@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEJANDRO TOLEDO MANRIQUE, | CASE NO.  21-CV-08395-LB |
| Petitioner, | GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO STAY EXTRADITION PENDING APPEAL |
| v. | |
| DONALD O'KEEFE, United States Marshal for the Northern District of California, | |
| Respondent. | |

1

2

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................................1

BACKGROUND .............................................................................................................................2

ARGUMENT ..................................................................................................................................3

    I.      STANDARD OF REVIEW ....................................................................................3

    II.     TOLEDO CANNOT JUSTIFY A STAY ..............................................................4

        A.      Toledo Cannot Demonstrate a Likelihood of Success .............................5

        B.      Toledo Has Not Shown that He Will Suffer Irreparable Harm If the
               Court Does Not Grant Relief .....................................................................7

        C.      Staying Toledo's Surrender Causes Injury to the United States and Is
               Contrary to the Public Interest .................................................................10

CONCLUSION...............................................................................................................................12

# TABLE OF AUTHORITIES

## Cases

*Aguasvivas v. Pompeo,*
    984 F.3d 1047 (1st Cir. 2021) ........................................................................................ 5, 6

*Artukovic v. Rison,*
    784 F.2d 1354 (9th Cir. 1986) ................................................................................. 4, 7, 10

*Assarsson v. United States,*
    102 S. Ct. 2950 (1982) ....................................................................................................... 4

*Blaxland v. Commonwealth Dir. of Pub. Prosecutions,*
    323 F.3d 1198 (9th Cir. 2003) .......................................................................................... 8

*Bowman v. Stafford,*
    No. 20-CV-2250-GPC-MSB, 2022 WL 316684 (S.D. Cal. Feb. 2, 2022) ........................... 7

*Bowman v. Stafford,*
    No. 22-55089 (9th Cir. Mar. 18, 2022) ............................................................................ 4

*Charlton v. Kelly,*
    229 U.S. 447 (1913) ........................................................................................................... 6

*Collins v. Loisel,*
    259 U.S. 309 (1922) ........................................................................................................... 6

*Demjanjuk v. Meese,*
    784 F.2d 1114 (D.C. Cir. 1986) .................................................................................... 4, 7

*Emami v. U.S. Dist. Ct.,*
    834 F.2d 1444 (9th Cir. 1987) ...................................................................................... 5, 6

*Factor v. Laubenheimer,*
    290 U.S. 276 (1933) ......................................................................................................... 10

*Ferdinando G. v. Sessions,*
    No. CV 18-11359 (KM), 2021 WL 321406 (D.N.J. Feb. 1, 2021) ...................................... 9

*Gutierrez v. United States,*
    136 S. Ct. 998 (2016) ......................................................................................................... 4

*Hilton v. Braunskill,*
    481 U.S. 770 (1987) ....................................................................................................... 4, 5

*Jimenez v. U.S. Dist. Ct. for the S. Dist. of Fla.,*
    84 S. Ct. 14 (1963) ...................................................................................................... 9, 10

*Kin-Hong v. United States*,
  520 U.S. 1206 (1997) ................................................................................................ 4

*Leiva-Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011) .............................................................................. 4, 7, 9

*Munaf v. Geren*,
  553 U.S. 674 (2008) ................................................................................................ 4

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................................................ passim

*Perez v. Mims*,
  No. 1:16-CV-01935-SKO HC, 2017 WL 374350 (E.D. Cal. Jan. 26, 2017) ...................... 9

*Prasoprat v. Benov*,
  421 F.3d 1009 (9th Cir. 2005) .................................................................................... 8

*Quintanilla v. United States*,
  582 Fed. App'x 412 (5th Cir. 2014) ........................................................................ 4, 7

*Rodriguez Caro v. Spurlock*,
  No. 17-CV-02758-RBJ, 2019 WL 8105995 (D. Colo. Mar. 8, 2019) .............................. 9

*Sacirbey v. Guccione*,
  589 F.3d 52 (2d Cir. 2009) ........................................................................................ 5

*Taylor v. McDermott*,
  No. 4:20-CV-11272-IT, 2021 WL 330053 (D. Mass. Feb. 1, 2021) ................................ 9

*United States v. Gutierrez-Espinoza*,
  No. 5:15-cr-303, 2015 WL 2165073 (W.D. Tex. May 4, 2015) ...................................... 7

*United States v. Kin-Hong*,
  110 F.3d 103 (1st Cir. 1997) ...................................................................................... 8

*Venckiene v. United States*,
  929 F.3d 843 (7th Cir. 2019) ............................................................................ 4, 9, 11

*Virginian R. Co. v. United States*,
  272 U.S. 658 (1926) ................................................................................................ 3

*Ye Gon v. Dyer*,
  137 S. Ct. 347 (2016) ................................................................................................ 4

## Statutes

18 U.S.C. § 3188 .................................................................................................. 10

1

**<u>Rules</u>**

2

Fed. R. App. P. 8(a)(1)(A) ................................................................................................................... 5

3

**<u>Other Authorities</u>**

4

Extradition Treaty Between the United States of America and the Republic of Peru, U.S.-Peru, July 26,

5

2001, S. Treaty Doc. No. 107-6 (2002) ................................................................................................ 2

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   The United States of America, by and through its undersigned counsel, hereby responds in

2   opposition to the motion filed by Alejandro Toledo Manrique ("Toledo") seeking to stay his extradition

3   to Peru pending his appeal of this Court's order (HC DE 21) denying his petition for a writ of *habeas*

4   *corpus*.[1]

5   ## INTRODUCTION

6   Two judges in this District have soundly rejected Toledo's challenges to the certification of his

7   extradition.  Nevertheless, Toledo now asks this Court, in essence, to grant him as a matter of course a

8   stay of extradition pending appeal.  But staying extradition pending appeal is an extraordinary remedy.

9   The Supreme Court has made clear that to justify such an exercise of this Court's discretion, the

10  applicant bears the burden of showing four factors—including, critically, a likelihood of success on the

11  merits of his claims.  Toledo does not, and cannot, meet this standard.  To justify a stay, "[m]ore than a

12  mere possibility of relief is required," and "[i]t is not enough that [his] chance of success on the merits

13  [could] be better than negligible."  *Nken v. Holder*, 556 U.S. 418, 434-35 (2009) (internal quotation

14  marks and citations omitted).  Far from identifying any flaw in this Court's reasoning that would merit

15  reversal, Toledo merely incorporates and rehashes the same arguments that have failed twice before.

16  Neither the law nor Toledo's arguments have changed, and no factor warrants granting a stay in this

17  case.

18  While Toledo cannot justify the extraordinary remedy he seeks, the denial of his motion would

19  not necessarily be the last opportunity for a court to review his claims, as the government does not

20  oppose Toledo's request for a temporary stay to allow him to seek a stay from the Court of Appeals for

21  the Ninth Circuit, so long as he properly files his stay application within a reasonable amount of time

22  following a denial of the instant stay motion.

23  Accordingly, the Court should deny Toledo's motion for a stay.

24  / / /

25  / / /

26

27  [1] All record citations to the events concerning Toledo's *habeas corpus* petition are denoted as "HC DE #" and reference the docket in the above-captioned case.  All record citations to the events in

28  Toledo's extradition case are denoted as "EX DE #" and reference the docket in Northern District of California Case Number 19-MJ-71055-MAG-1 (TSH).

GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO STAY EXTRADITION
PENDING APPEAL
CASE NO. 21-CV-08395-LB                                                                           1

**BACKGROUND**

A detailed summary of this case appears in the government's opposition to Toledo's *habeas* petition.  *See* HC DE 9 at 11-15.  As is relevant here, Peru seeks Toledo's extradition so that he may stand trial on charges of collusion and money laundering arising out of a bribery scheme orchestrated while Toledo served as the President of Peru.  In particular, Peru's evidence demonstrates that in 2004, Toledo solicited a bribe, which was paid and laundered, upon Toledo's instructions, at least through 2012.

On February 3, 2017, and March 7, 2017, a Peruvian prosecutor issued decisions (collectively, the "Prosecutor's Decisions") charging Toledo with the offenses for which his extradition is sought.  *See* Extradition Request (hereinafter, "ER") at 6-18; *id.* at 3191-3247; *id.* at 3248-91.  On May 25, 2018, Peru sent the United States a multi-thousand-page request for Toledo's extradition pursuant to its extradition treaty with the United States (the "Treaty")[2]; and on June 4, 2019, it submitted a supplement thereto.  Peru subsequently also submitted the *Acusacion Fiscal*, a document issued on August 11, 2020, enumerating the charges against Toledo and other defendants, and dismissing certain other charges.

On July 15, 2019, the United States, in accordance with its obligations under the Treaty, filed a complaint in this District seeking a warrant for Toledo's arrest, which Magistrate Judge Thomas S. Hixson (the "extradition court") issued.  Toledo was arrested the next day.  Following a detention hearing, the extradition court ordered Toledo detained for the pendency of the extradition proceedings.  EX DE 16.  The parties continued litigating the issue of detention until the extradition court granted a motion for reconsideration filed by Toledo based on his risk of contracting COVID-19 on March 19, 2020, *see* EX DE 115; and Judge Vince Chhabria denied the government's appeal thereof, EX DE 118.  In addition, the parties filed a couple of other substantive motions, including the government's motion for reconsideration of the appointment of counsel for Toledo based on undisclosed assets, which the extradition court denied on January 31, 2020, *see* EX DE 88, and Toledo's motion seeking to compel discovery, which the extradition court granted in part, on limited grounds, on February 6, 2020, *see* EX DE 92.

_____

[2] Extradition Treaty Between the United States of America and the Republic of Peru, U.S.-Peru, July 26, 2001, S. Treaty Doc. No. 107-6 (2002).

GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO STAY EXTRADITION PENDING APPEAL
CASE NO. 21-CV-08395-LB                                                                    2

1   The parties agreed to bifurcate briefing on the merits of the extradition.  Accordingly, first, on

2   July 10, 2020, Toledo filed a motion to dismiss arguing that: (1) he was not charged with the crimes for

3   which his extradition is sought, as required under the Treaty, and (2) Peru failed to provide a copy of the

4   relevant charging document, as required under the Treaty.  EX DE 137.  Second, on July 8, 2021,

5   Toledo filed a motion to dismiss presenting his argument that extradition should be denied for lack of

6   probable cause.  EX DE 170.

7   The extradition court denied both of Toledo's motions in separate orders issued on September 4,

8   2020, and September 28, 2021, and certified that Toledo is extraditable to Peru on the two charges for

9   which his extradition is sought.  EX DE 147; EX DE 188, *available at In re Extradition of Toledo*

10  *Manrique*, No. 19MJ71055MAG1TSH, 2021 WL 5037680 (N.D. Cal. Oct. 29, 2021).  On October 28,

11  2021, Toledo filed a *habeas* petition challenging the certification, which this Court denied on April 22,

12  2022.  HC DE 17.  A week later, Toledo filed the instant motion to stay his extradition pending appeal.

13  HC DE 21.

**ARGUMENT**

14  

**I.   STANDARD OF REVIEW**

15  

16  Although the power to stay an action is "part of [a court's] traditional equipment for the

17  administration of justice," *Nken*, 556 U.S. at 421, a stay is not a matter of right, "'even if irreparable

18  injury might otherwise result,'" *id*. at 433 (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672

19  (1926)).  *See also id.* at 437 (Kennedy, J., concurring) ("A stay . . . is an extraordinary remedy that

20  should not be granted in the ordinary case, much less granted as of right.").  While issuance of a stay is

21  subject to a court's discretion, a court's judgment "is to be guided by sound legal principles."  *Id.* at 434

22  (internal quotations and citation omitted).

23  The "'propriety of [issuance of a stay] is dependent on the circumstances of the particular case.'"

24  *Id.* at 433 (quoting *Virginian R. Co.*, 272 U.S. at 672).  The party requesting a stay "bears the burden of

25  showing that the circumstances justify an exercise of [the court's] discretion."  *Id*. at 433-34.  A court

26  must consider four factors before issuing a stay: "'(1) whether the stay applicant has made a strong

27  showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured

28  absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the

proceeding; and (4) where the public interest lies."' *Id*. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

The Ninth Circuit has adopted a "flexible approach" to this four-part standard, in which "a petitioner seeking a stay . . . must show that irreparable harm is probable and either: (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships tips sharply in the petitioner's favor." *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011). *But see, e.g.*, *Munaf v. Geren*, 553 U.S. 674, 690 (2008) (the fact that the case presented questions "so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberative investigation" provided "no reason to grant a preliminary injunction" issued to halt petitioner's transfer to Iraqi authorities because such questions "say[] nothing about the likelihood of success on the merits"); *Nken*, 556 U.S. at 438-39 ("When considering success on the merits and irreparable harm, courts cannot dispense with the required showing of one simply because there is a strong likelihood of the other. This is evident in the decisions of Justices of the Court applying the traditional factors.") (Kennedy, J., concurring).

## II.   TOLEDO CANNOT JUSTIFY A STAY

The Court should deny Toledo's motion because he has not met, and cannot meet, his burden of demonstrating any of the factors needed to justify a stay. Contrary to his suggestion, from the Supreme Court to district courts, the federal judiciary routinely denies stays of extradition where, as here, the government has argued that a fugitive failed to show a likelihood of success on appeal.[3] Toledo's citation to a handful of cases where stays were granted, *see* HC DE 21 at 11-12, does not advance his argument because the "'traditional stay factors contemplate individualized judgments in each case.'"

---

[3] *See, e.g.*, *Montano Morales v. Elks*, No. 17A445 (Nov. 15, 2017) (Roberts, C.J.); *Ye Gon v. Dyer*, 137 S. Ct. 347 (2016); *Gutierrez v. United States*, 136 S. Ct. 998 (2016); *Kin-Hong v. United States*, 520 U.S. 1206 (1997); *Assarsson v. United States*, 102 S. Ct. 2950 (1982); *Venckiene v. United States*, 929 F.3d 843, 865 (7th Cir. 2019); *Quintanilla v. United States*, 582 Fed. App'x 412, 415 (5th Cir. 2014); *Artukovic v. Rison*, 784 F.2d 1354, 1355 (9th Cir. 1986); *Demjanjuk v. Meese*, 784 F.2d 1114, 1118 (D.C. Cir. 1986); *In re Gonzalez*, No. 09-MJ-70576, 2015 WL 1409327, at *4 (N.D. Cal. Mar. 27, 2015); *United States v. Gutierrez-Espinoza*, No. 5:15-cr-303, 2015 WL 2165073, at *2 (W.D. Tex. May 4, 2015); *Bowman v. Stafford*, No. 22-55089, Order (9th Cir. Mar. 18, 2022); *United States v. Nascimento*, No. 21-10999-CC, Order (11th Cir. May 18, 2021); *Caro v. Weaver*, No. 18-1469, Order (10th Cir. Apr. 30, 2019); *Ramirez Luna v. O'Keefe*, No. 18-15450, Order (9th Cir. June 26, 2018).

1  *Nken*, 556 U.S. at 433-34 (quoting *Hilton*, 481 U.S. at 777).  As explained herein, the Court should deny

2  Toledo's motion for extraordinary relief in this case.[4]

3      **A.**    **Toledo Cannot Demonstrate a Likelihood of Success**

4         This Court should deny Toledo's motion for the threshold reason that he has failed to

5  demonstrate that he is likely to obtain a reversal of this Court's decision in the Ninth Circuit.  The

6  Supreme Court in *Nken* established that the "critical" first stay factor requires the applicant to make "a

7  strong showing" of "more than a mere 'possibility' of relief."  556 U.S. at 434.  "It is not enough that the

8  chance of success on the merits be better than negligible."  *Id.* (internal quotation marks and citation

9  omitted).  As Justice Kennedy explained in his concurring opinion, previous Supreme Court decisions

10  "make clear the applicant must meet a heavy burden of showing . . . that the judgment of the lower court

11  was erroneous on the merits."  *Id.* at 439 (Kennedy, J., concurring) (internal quotation marks and

12  citation omitted).

13         In his stay motion, Toledo simply presents the exact same arguments—regarding the charging

14  and the charging-document requirements of the Treaty, and regarding the evidence establishing probable

15  cause that he committed the offenses for which his extradition is sought—which this Court rejected

16  when it denied his *habeas* petition and which Judge Hixson rejected when he certified Toledo's

17  extraditability.  *See* HC DE 17.  These arguments fail to establish any likelihood of success on appeal,

18  let alone a strong likelihood of success or a substantial case on the merits.

19         As explained more fully in the government's opposition to Toledo's *habeas* petition (HC DE 9),

20  Toledo is not likely to prevail on his claim that he has not been "charged" as required by the Treaty.

21  Toledo argues that three cases—namely, *Emami v. U.S. Dist. Ct.*, 834 F.2d 1444 (9th Cir. 1987),

22  *Aguasvivas v. Pompeo*, 984 F.3d 1047 (1st Cir. 2021), and *Sacirbey v. Guccione*, 589 F.3d 52 (2d Cir.

23  2009)—warrant the Ninth Circuit's review of this case.  However, *Emami* supports this Court's

24  interpretation of "charged" as meaning "accused" and not "formally charged," and the two out-of-circuit

25  decisions are not contrary to it.  *See* HC DE 17 at 13-18; HC DE 9 at 17-18.  Moreover, Toledo

26

27        [4] While the government agrees that Toledo may seek a stay of extradition from this Court, *see* Fed. R. App. P. 8(a)(1)(A), Toledo's reliance on Rule 62(c) of the Federal Rules of Civil Procedure

28  (regarding a "Stay of an Injunction, Receivership, or Patent Accounting Order") to support his motion, *see* HC DE 21 at 5, is misplaced.

GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO STAY EXTRADITION
PENDING APPEAL
CASE NO. 21-CV-08395-LB                5

1  disregards this Court's finding that other authority, namely, "the Treaty's text and drafting history[,]

2  provide ample support for the view that the term 'charged' . . . means 'accused' or 'sought for

3  prosecution' and does not apply only to those who are 'formally charged.'"  HC DE 17 at 18.  Toledo

4  also fails to explain how he could overcome the independent requirements that "any ambiguities in

5  treaties should be construed to enlarge the rights of the parties" and that "the views of the U.S. and Peru

6  are entitled to deference." *Id.* at 16, 18.  He cannot.

7      Toledo is similarly not likely to prevail on his claim that Peru has failed to provide the "charging

8  document" required under the Treaty.  Although he argues that the Ninth Circuit may find the First

9  Circuit's decision in *Aguasvivas*, 984 F.3d 1047, to be "applicable and persuasive," HC DE 21 at 15,

10  that decision "is not helpful" to Toledo, as this Court concluded, because its "core holding . . . that a

11  warrant cannot serve 'double duty' and satisfy both a warrant and charging-document requirement" is

12  not applicable in this case, where Peru has provided different documents to satisfy each of those

13  requirements.  *See* HC DE 17 at 20.  Toledo does not otherwise explain how the Prosecutor's Decisions

14  and the *Acusacion Fiscal* do not satisfy the charging-document requirement.

15      Toledo is also not likely to prevail on his claim that no competent evidence supports the

16  extradition court's finding of probable cause or his claim that he is entitled to *habeas* relief based on the

17  extradition court's purportedly erroneous exclusion of evidence.  Toledo offers no support for the former

18  claim, other than the latter.  For the latter claim, he fails to address the unequivocal language of the

19  Supreme Court that the "wrongful exclusion of specific pieces of evidence, however important, does not

20  render [a fugitive's] detention illegal," *Collins v. Loisel*, 259 U.S. 309, 316 (1922), and that "[m]ere

21  errors in the rejection of evidence are not subject to review by a writ of habeas corpus," *Charlton v.

22  Kelly*, 229 U.S. 447, 456-57 (1913).  And in any event, the extradition court's evidentiary rulings were

23  proper for the reasons articulated by this Court.  *See* HC DE 17 at 23-25.

24      Accordingly, Toledo has failed to demonstrate that he is likely to convince the Ninth Circuit to

25  reverse this Court on any ground.  This failure alone warrants denial of his stay motion.  *See Nken*, 556

26  U.S. at 433 ("A stay is not a matter of right, *even if irreparable injury might otherwise result.*") (citation

27  omitted; emphasis added).

28  / / /

GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO STAY EXTRADITION
PENDING APPEAL
CASE NO. 21-CV-08395-LB                                                                                    6

### B. Toledo Has Not Shown that He Will Suffer Irreparable Harm If the Court Does Not Grant Relief

Demonstrating that irreparable harm is "probable" is "a necessary but not sufficient condition for the exercise of judicial discretion to issue a stay." *Leiva-Perez*, 640 F.3d at 965, 968.  Regardless, Toledo also fails to demonstrate a probability that he will suffer irreparable harm if this Court denies his request for a stay.

As with likelihood of success on the merits, irreparable harm must be based on individualized circumstances.  *Nken*, 556 U.S. at 433-34; *Leiva-Perez*, 640 F.3d at 969; *Bowman v. Stafford*, No. 20-CV-2250-GPC-MSB, 2022 WL 316684, at *3 (S.D. Cal. Feb. 2, 2022) (denying fugitive's request for a stay of extradition, and concluding that "a Petitioner must show that the irreparable harm is specific to his case, as opposed to a reason that would apply equally to all others in all cases").  Here, Toledo claims in part that he would be irreparably harmed if he were surrendered to Peru without appellate review of the denial of his *habeas* petition.  HC DE 21 at 11-12.  While the government agrees with Toledo that his surrender would render his appeal moot, this claimed irreparable harm applies categorically to any fugitive who seeks a stay of extradition pending appeal.  An individualized assessment of whether Toledo would be irreparably harmed by losing the opportunity for appellate review of his claims logically depends on the likelihood of success on the merits of his claims.  *See Nken*, 556 U.S. at 433-34.  As shown above, Toledo cannot succeed on those claims.  Lack of further review of the claims therefore fails to justify a stay.  *See, e.g.*, *Artukovic v. Rison*, 784 F.2d 1354, 1356-57 (9th Cir. 1986) (denying stay motion even assuming extradition would constitute irreparable harm); *Quintanilla v. United States*, 582 Fed. App'x 412, 414-15 (5th Cir. 2014) (same); *Demjanjuk v. Meese*, 784 F.2d 1114, 1118 (D.C. Cir. 1986) (same).

Toledo also argues that he faces potential harm in a Peruvian prison if extradited, HC DE 21 at 12-13, but this argument fails to demonstrate the requisite irreparable harm for two reasons.

*First*, "simply showing some possibility of irreparable injury fails to satisfy the second factor." *Nken*, 556 U.S. at 434-35 (internal quotations and citation omitted).  Here, Toledo cannot presently be extradited to Peru because the Secretary of State has not yet rendered a decision on his surrender.  Although this Court has upheld the extradition court's certification order, the Secretary of State must

still conduct his own review of Peru's request for Toledo's extradition, and Toledo may present any

arguments he wishes, including any humanitarian claims in defense of extradition, to the Secretary.  *See,*

*e.g.*, *Prasoprat v. Benov*, 421 F.3d 1009, 1016 (9th Cir. 2005); *see also, e.g.*, *United States v. Kin-Hong*,

110 F.3d 103, 111 (1st Cir. 1997) ("It is not that questions about what awaits the [fugitive] in the

requesting country are irrelevant to extradition; it is that there is another branch of government, which

has both final say and greater discretion in these proceedings, to whom these questions are more

properly addressed.").[5]

    *Second*, Toledo's claim about the conditions purportedly faced by many Peruvian inmates does

not demonstrate that the harm he himself may face is either probable or irreparable.  As an initial matter,

he may not be subject to lengthy pre-trial detention in Peru as he claims.  For example, other individuals,

including former presidential candidate Keiko Fujimori and former mayor of Lima Susana Villaran, who

are implicated in investigations involving Odebrecht bribes, have been released from pre-trial detention.

*See Peru's Keiko Fujimori to Be Freed from Prison During Graft Investigation*, Reuters (Apr. 30,

2020).[6]  In addition, Toledo has failed to identify the conditions of any prison in which he would be

likely to be housed, if detained.  *Cf. United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997) ("The

State Department . . . has the power to attach conditions to an order of extradition . . . .  Of course, the

Secretary may also elect to use diplomatic methods to obtain fair treatment for the [fugitive].") (internal

citations omitted).

    Regardless, the well-established rule of non-inquiry precludes this Court from considering claims

regarding the treatment a fugitive may face in the requesting country.  *See, e.g.*, *Blaxland v.*

*Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1208 (9th Cir. 2003) (stating that "judges

generally refrain from examining the penal systems of requesting nations, leaving to the Secretary of

State determinations of whether the defendant is likely to be treated humanely") (internal quotation

marks and citation omitted).  While Toledo may present such claims to the Secretary of State, they do

---

[5] If the possibility of extradition alone were enough to show irreparable harm, every petitioner challenging a certification of extraditability would be entitled to an automatic stay until all of challenges thereto were exhausted—thereby controverting the notion the imposition of a stay is an extraordinary measure that is the exception and not the rule.  *See Nken*, 556 U.S. at 437 (Kennedy, J., concurring).

[6] *Available at* https://www.reuters.com/article/us-peru-corruption/perus-keiko-fujimori-to-be-freed-from-prison-during-graft-investigation-idUSKBN22C3YQ.

GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO STAY EXTRADITION
PENDING APPEAL
CASE NO. 21-CV-08395-LB                                                                                    8

1   not establish a proper basis on which to grant his request for a stay application.[7]  *See, e.g.*, *Venckiene v.*

2   *United States*, 929 F.3d 843, 864 (7th Cir. 2019) (no irreparable harm, despite fugitive's claims that her

3   physical safety would be threatened if extradited, because "these important humanitarian considerations

4   are left to the executive branch"); *Ferdinando G. v. Sessions*, No. CV 18-11359 (KM), 2021 WL

5   321406, at *8 (D.N.J. Feb. 1, 2021) ("The Court, however, has not reviewed the likelihood of

6   [irreparable harm in the form of torture if extradited] occurring, and is not empowered to do so.  That

7   issue is reserved to the Secretary of State. . . .  It is not the province of this Court to supplant the

8   Secretary's judgment, whether substantively or in the context of a stay application."); *Perez v. Mims*,

9   No. 1:16-CV-01935-SKO HC, 2017 WL 374350, at *4 (E.D. Cal. Jan. 26, 2017) ("Petitioner argues that

10  he has proven irreparable injury in that he will be tortured or killed if he is returned to face prosecution

11  in Mexico . . . [but] whether Petitioner may face torture upon his return to Mexico is outside this Court's

12  habeas jurisdiction.").  Thus, the "harm" that Toledo asserts at this juncture is speculative and does not

13  support his request for a stay.  *See, e.g.*, *Nken*, 556 U.S. at 434-35; *Jimenez v. U.S. Dist. Ct. for the S.*

14  *Dist. of Fla.*, 84 S. Ct. 14, 19 (1963) (Goldberg, J., in chambers) (finding "no compelling reason for

15  further delaying" extradition of the former Venezuelan president); *Rodriguez Caro v. Spurlock*, No. 17-

16  CV-02758-RBJ, 2019 WL 8105995, at *1 (D. Colo. Mar. 8, 2019) (no irreparable harm, despite

17  fugitive's arguments about potential physical harm if extradited to Mexico, because the court declined

18  "to speculate that Mexican authorities cannot and will not protect Mr. Rodriguez-Caro while he is in

19  their custody").[8]

20  / / /

21  / / /

22  / / /

---

23

24      [7] The *Leiva-Perez* court noted that consideration of the likelihood of physical danger should be
    part of the irreparable harm inquiry in the context of immigration cases involving claims of asylum,

25  withholding of removal, and torture—where the rule of non-inquiry does not apply.  *See* 640 F.3d at
    969.

26      [8] Moreover, given the government's agreement to a temporary stay to allow Toledo to seek a
    stay from the Ninth Circuit, as set forth above, Toledo will not suffer irreparable harm from this Court's

27  denial of the pending stay motion.  *See, e.g.*, *Taylor v. McDermott*, No. 4:20-CV-11272-IT, 2021 WL
    330053, at *1 (D. Mass. Feb. 1, 2021) (no irreparable harm where "[t]he government has confirmed that

28  it will not surrender the [fugitives] to the Japanese government before [a date certain, such that] . . . they
    have sufficient time to file a motion to stay with the First Circuit").

GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO STAY EXTRADITION
PENDING APPEAL
CASE NO. 21-CV-08395-LB                                                              9

**C. Staying Toledo's Surrender Causes Injury to the United States and Is Contrary to the Public Interest**

The third and fourth *Nken* factors, prejudice to the nonmoving party and the public interest, "merge when the Government is the opposing party." 556 U.S. at 435.  In an international extradition case such as this one, a court must "consider 'strongly' the public interest as an additional factor." *Artukovic*, 784 F.2d at 1355 (citation omitted).  As the Supreme Court observed, the role of the Government "does not make the public interest . . . negligible." *Nken*, 556 U.S. at 435.  Although "there is a public interest in preventing [persons] from being wrongfully [surrendered]," that is no basis for assuming the "absence of any injury to the public interest" if a stay is granted. *See id.* at 436.  Therefore, "[a] court asked to stay [surrender] cannot simply assume that ordinarily, the balance of hardships will weigh heavily in the applicant's favor." *See id.* (internal quotation marks and citation omitted).

Toledo's argument that a stay is in the public interest is contrary to Supreme Court precedent providing that "[t]he surrender of a fugitive, duly charged in the country from which he has fled with a nonpolitical offense and one generally recognized as criminal at the place of asylum, involves no impairment of any legitimate public or private interest." *Factor v. Laubenheimer*, 290 U.S. 276, 298 (1933).  Here, the United States has a strong interest in having extradition requests submitted by our treaty partners such as Peru resolved without undue delay, both to comply with our treaty obligations and to further our reciprocal interest in having other nations cooperate swiftly with our own extradition requests and other law enforcement objectives. *See, e.g.*, *Artukovic*, 784 F.2d at 1356 ("[T]he public interest will be served by the United States complying with a valid extradition application . . . under the treaty.  Such proper compliance promotes relations between the two countries, and enhances efforts to establish an international rule of law and order.").  As was true with the removal order at issue in *Nken*, there is "always" a public interest in the prompt execution of surrender orders. 556 U.S. at 436.[9]

---

[9] Like the Supreme Court, Congress has also recognized the importance of prompt surrenders.  In particular, Congress enacted 18 U.S.C. § 3188, which permits fugitives to seek release if they are not surrendered within two calendars months of the final adjudication of their certification.  That statute is intended both to protect fugitives against indefinite detention and also to ensure that the United States would act swiftly in fulfilling its extradition obligations to its treaty partners. *See Jimenez*, 84 S. Ct. at 18 ("Section 3188 . . . was intended to implement our treaty obligations '*without delay* and the danger of a denial of justice' to the accused.  Its purpose was to ensure *prompt action* by the extraditing

1       By contrast, a stay that causes unwarranted delay in the United States' fulfillment of its

2   obligations to Peru—particularly if one is entered when Toledo is unlikely to succeed on the merits of

3   his claims—may harm its credibility in the international arena and impair its ability to obtain the

4   cooperation of foreign nations in bringing U.S. fugitives to justice.  While Toledo suggests that

5   purported "lack of urgency" by Peru and the United States justifies the "relatively brief delay" he seeks,

6   HC DE 21 at 15-17, he is incorrect.  He claims that Peru did not begin its investigation until 2017, *id.* at

7   16, but, in fact, on February 3, 2017, the investigation relating to Odebrecht was "extend[ed]" to Toledo

8   in Prosecutor's Decision No. 6—which "formaliz[ed] and continu[ed]" the investigation.  ER at 3191-

9   3247.  As early as 2013 (one year after the last alleged criminal conduct), Peru was interviewing

10  witnesses—including Toledo himself—and collecting documents that were ultimately included in its

11  request for Toledo's extradition.  *See, e.g.*, ER at 2632-78; *id.* at 2713-41; *id.* at 2919-20; *id.* at 5019-74.

12  Peru submitted its extradition request a little over a year after the formalization of the investigation into

13  Toledo.  The United States, in turn, proceeded to arrest Toledo for extradition in July 2019, shortly after

14  Peru's extradition request was legally sufficient and actionable following its June 2019 submission of a

15  supplement to its original request.  As early as August 2019, the government indicated that it was

16  "prepared to proceed with the extradition hearing as expeditiously as the Court's schedule allow[ed]."

17  EX DE 21 at 12.  However, after litigating detention, among other issues, merits briefing in the case was

18  set months out, and was further delayed twice upon Toledo's request.  *See* EX DE 129; EX DE 138; EX

19  DE 158; EX DE 162.

20      But even if there had been any undue delay, that would not warrant the stay Toledo seeks, given

21  that the "[f]ailure to comply with foreign nations' proper extradition requests threatens to erode the

22  effective force of the[] treaties."  *Venckiene*, 929 F.3d at 865.  Peru has done all that the Treaty and U.S.

23  law require for Toledo's certification as extraditable, and significant national interests will be harmed if

24  he is allowed to delay the process by pursuing meritless claims.

25  ///

26  ///

27  _____

28  government as well as by this government so that the accused would not suffer incarceration in this
country or uncertainty as to his status for long periods of time through no fault of his own.") (emphasis
added).

GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO STAY EXTRADITION
PENDING APPEAL
CASE NO. 21-CV-08395-LB                                                                    11

**CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny Toledo's Motion to Stay Extradition Pending Appeal.


DATED:  May 12, 2022                              Respectfully submitted,

                                                 STEPHANIE M. HINDS
                                                 United States Attorney

                                                   /s/
                                                 _____
                                                 KYLE F. WALDINGER
                                                 Assistant United States Attorney

                                                 REBECCA A. HACISKI
                                                 Acting Associate Director
                                                 Office of International Affairs