1   JODI H. LINKER
    Federal Public Defender
2   Northern District of California
    MARA K. GOLDMAN
3   GRAHAM ARCHER
    Assistant Federal Public Defenders
4   55 South Market Street, Suite 820
    San Jose, CA 95113
5   Telephone:   (408) 291-7753
    Facsimile:   (408) 291-7399
6   Email:       Mara_Goldman@fd.org

7

8   Counsel for Petitioner TOLEDO

9

10                  IN THE UNITED STATES DISTRICT COURT

11              FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13

14   ALEJANDRO TOLEDO MANRIQUE,          Case No. 21-cv-08395-LB

15              Petitioner,              **REPLY RE: MOTION TO STAY
                                         EXTRADITION PENDING APPEAL**
16        v.

17   DONALD O'KEEFE,

18              Defendant.

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Dr. Toledo has raised serious legal issues that the Ninth Circuit will review de novo. Resolution of these issues will benefit both Dr. Toledo and the public.  Unless a stay is granted, however, Dr. Toledo will suffer irreparable injury because he will almost certainly be extradited before the Ninth Circuit has an opportunity to decide his appeal.  In addition, Dr. Toledo will suffer irreparable harm if he is returned to Peru and put in preventive imprisonment.  The delay resulting from a stay is minimal considering the lack of urgency demonstrated by both the United States and Peru.  And the public interest will be served by ensuring that Dr. Toledo is not extradited in violation of the terms of the U.S.-Peru treaty.  For all of these reasons, the Court should grant a stay pending appeal.

## ARGUMENT

### I.    Dr. Toledo Has Shown That His Appeal Raises Serious Questions and More Than a "Mere Possibility" of Success on the Merits

The government argues that "from the Supreme Court to district courts, the federal judiciary routinely denies stays of extradition where, as here, the government has argued that a fugitive failed to show a likelihood of success on appeal."  Govt. Opp. at 4 & n.3.  As an initial matter, many of the cases cited by the government are summary decisions that offer no information about why the stay was denied.  *See, e.g., Montano Morales v. Elks*, No. 17A445 (Nov. 15, 2017) (Roberts, C.J.); *Ye Gon v. Dyer*, 137 S.Ct. 347 (2016);[1] *Gutierrez v. United States*, 577 U.S. 1126 (2016); *Kin-Hong v. United States*, 520 U.S. 1206 (1997); *Assarsson v. United States*, 457 U.S. 1127 (1982).  More importantly, Dr. Toledo is not required to show that he is likely to prevail on appeal.  He does not even have to demonstrate that he has a 50% chance of success.  *See Mohammed v. Reno*, 309 F.3d 95, 101-02 (2d Cir. 2002).  It is enough for him to show that he has a "fair prospect" of success.  *Leiva-Perez v. Holder*, 640 F.3d 962, 967 (9th Cir. 2011) (citation omitted).  Alternatively, he can justify a stay by showing that his appeal raises "serious legal questions."  *Id.*  He satisfies both standards.

Whether the U.S.-Peru treaty requires formal charges is not only a question that the Ninth

---

[1] Notably, while the Supreme Court denied a request to stay pending the petition for certiorari in *Ye Gon*, the Fourth Circuit *granted* the petitioner's request for a stay pending appeal.  *See Ye Gon v. Dyer*, 651 Fed. App'x 249, 252 n.3 (4th Cir. 2016).

1   Circuit will consider de novo, but one that is left open by *Emami v. U.S. Dist. Ct. for N. Dist. of Cal*,

2   834 F.2d 1444 (9th Cir. 1987).  In *Emami*, the Ninth Circuit explicitly distinguished between treaties,

3   like the U.S.-West Germany treaty that was at issue in that case, that do not require a charging

4   documents and treaties, like the U.S.-Peru treaty, that do.  For this reason, Dr. Toledo's case is

5   distinguishable from a case like *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986) (denying

6   request for a stay because the extraditee's "absurd and offensive" legal arguments had already been

7   rejected or foreclosed by the Ninth Circuit), or *In re Gonzalez*, No. 09-mj-70576-DMR, 2015 WL

8   1409327, *3 (N.D. Cal. Mar. 27, 2015) (denying stay where numerous courts had already considered

9   "this precise issue," and the only decision favorable to the extraditee had been overruled).  Nor is this

10  an argument that is facially invalid, like the ones presented in *United States v. Nascimento*, No. 6:20-

11  cv-2041-PGB-GJK, 2021 WL 3500811, * (M.D. Fla. May 18, 2021) (denying stay where extraditee

12  argued that the dual criminality was not met, even though he was accused of attempted murder, a

13  crime in both countries), and *Demjanjuk v. Meese*, 784 F.2d 1114, 1116 (D.C. Cir. 1986) (denying

14  stay where extraditee's argument relied on an International Convention not yet in effect).

15          Likewise, Dr. Toledo's argument that Peru has failed to comply with the charging document

16  requirement is supported by cases in which other circuits have considered similar arguments and

17  reached favorable decisions.  *See, e.g., Aguasvivas v. Pompeo*, 984 F.3d 1047 (1st Cir. 2021);

18  *Sacirbey v. Guccione*, 589 F.3d 52 (2d Cir. 2009).  Both arguments raise important legal questions

19  that have not yet been decided by the Ninth Circuit.

20          The government complains that Dr. Toledo "merely incorporates and rehashes the same

21  arguments" that were already rejected by this Court and the extradition court.  *See* Govt. Opp. at 1.  It

22  is true that Dr. Toledo's arguments were previously rejected, but this is true of every appeal;

23  otherwise, there would be no need to appeal.  The fact that this Court was unpersuaded by Dr.

24  Toledo's arguments does not mean that a stay is unwarranted.  *See Yoo v. United States*, 21-cv-6184

25  (CS), 2021 WL 6100609, *1 (S.D.N.Y. Nov. 16, 2021).

26  **II.   Dr. Toledo Will Suffer Irreparable Harm Unless a Stay Is Granted**

27          **A.     Dr. Toledo Will Suffer Irreparable Harm If He Is Extradited Before His Appeal
                     Can Be Heard**

28
        The government concedes that Dr. Toledo's appeal will become moot if he is extradited.  *See*

1    Govt. Opp. at 7:13-15.  As the Ninth Circuit made clear in *Artukovic*, this fact alone satisfies the

2    irreparable harm factor:  "The possibility of irreparable injury to [petitioner] if we deny his motion is

3    evident: his appeal will be moot and will be dismissed since the extradition will have been carried

4    out."  *Artukovic*, 784 F.2d at 1356; *see also, e.g., Yoo*, 2021 WL 6100609 at *2 (extradition would

5    moot appeal and "unquestionably cause irreparable injury"); *In re Gonzalez*, No. 09-mj-70576-DMR,

6    2015 WL 1409327, *2 (N.D. Cal. Mar. 27, 2015) (same); *Martinez v. United States*, No. 14-cv-

7    00174, 2014 WL 4446924, *4 (M.D. Tenn. Sept. 9, 2014) (same); *Nezirovic v. Holt*, No. 7:13cv428,

8    2014 WL 3058571, *2 (W.D. Va. July 7, 2014); *Ye Gon v. Holt*, No. 11-cv-00575, 2014 WL 202112,

9    *1 (W.D. Va. Jan. 17, 2014) (same); *Noriega v. Pastrana*, No. 07-cv-22916-PHC, 2008 WL

10    3058571, *2 (S.D. Fla. Jan. 31, 2008) (same).

11        *Artukovic*'s binding precedent notwithstanding, the government argues that the prospect of

12    extradition cannot satisfy the irreparable harm requirement because "this claimed irreparable harm

13    applies categorically to any fugitive who seeks a stay of extradition pending appeal."  *See* Govt. Opp.

14    at 7.  In support of its argument, the government cites *Nken*, 556 U.S. 418, 433-34 (2009), and *Leiva-*

15    *Perez*.  Neither case supports the government's position, however.  In *Nken*, the Supreme Court

16    addressed the question of irreparable harm in the context of immigration proceedings.  In that

17    context, the Court held that the harm from removal "is not *categorically* irreparable" because

18    "[a]liens who are removed may continue to pursue their petitions for review, and those who prevail

19    can be afforded effective relief by facilitation of their return[.]"  *Nken*, 556 U.S. at 435 (emphasis

20    added).  In other words,  *Nken* did not hold that there can never be a situation that is "categorically

21    irreparable"; it held only that *removal* does not categorically cause irreparable harm in the

22    immigration context.  In *Leiva-Perez*, another immigration case, the Ninth Circuit interpreted *Nken* to

23    mean that

24           a noncitizen must show that there is a reason specific to his or her case, as
25           opposed to a reason that would apply equally well to all aliens and all cases,
       that removal would inflict irreparable harm – *for example, that removal would*
26           *effectively prevent her from pursuing a petition for review, or that, even if she*
       *prevails, she could not be afforded effective relief.*

27    *Leiva-Perez*, 640 F.3d at 969 (emphasis added).

28        Unlike individuals seeking review of immigration proceedings, Dr. Toledo will have no ability

REPLY RE: MOTION TO STAY EXTRADITION PENDING APPEAL

to "continue to pursue" his appeal if he is extradited, nor will he "be afforded effective relief." Accordingly, his extradition would cause irreparable harm.

The government also argues that Dr. Toledo cannot demonstrate irreparable harm because the Secretary of State has "not yet rendered a decision on his surrender."  Govt. Opp. at 7.  It is, of course, true that denying a stay will not harm Dr. Toledo if the State Department ultimately declines to extradite him.  But it is equally true that, if the State Department declines to extradite, granting a stay will not have harmed the government or the public interest.  Likewise, if the State Department opts to delay its decision until after the appeal is resolved, there will be no need for a stay, but also no harm in granting one.  As the Department of Justice and the State Department are two members of the executive branch, working in tandem, the government is in the best position to advise this Court if the State Department is willing to wait for the appeal to conclude.  In the absence of such assurances, however, there is no reason to expect that the State Department will do so.  On the contrary, extradition appeals are frequently dismissed as moot because the petitioner is extradited before the appeal can be heard and decided.  *See, e.g., United States v. Nascimento*, No. 21-10999-CC, 2021 WL 4399534 (11th Cir. Sept. 22, 2021) (granting government's motion to dismiss as moot because petitioner has been extradited to Brazil); *Struga v. Terris*, No. 18-2160, 2019 WL 1531514 (6th Cir. Jan. 22, 2019) (dismissing appeal because "surrender of an individual into the custody of foreign law enforcement authorities renders that individual's appeal challenging the lawfulness of his extradition moot"); Mandate, *Moshir v. Salina*, No. 17-3736 (11th Cir. Dec. 12, 2018) ("Because Appellant is no longer in the custody of the United States, resolution of his appeal can provide him no relief."); *Guardado-Figueroa v. Kuta*, 583 Fed. App'x 550 (7th Cir. 2014) (dismissing appeal as moot because petitioner has been extradited to Mexico); Order, *Quintanilla v. United States*, No. 14-50921 (5th Cir. Oct. 29, 2014) (granting motion to dismiss appeal as moot because petitioner has been extradited).

**B.    Dr. Toledo Will Suffer Irreparable Harm If He Is Subjected to Preventive Imprisonment in Peru**

The U.S. State Department has determined that Peru's prisons are dangerously overcrowded, lack proper sanitation or even drinkable water, and are unable to provide adequate medical care.  *See*

*generally* U.S. State Dept., *Country Reports on Human Rights Practices for 2021: Peru* (Feb. 2022).[2] The government does not dispute that Dr. Toledo would be at risk of severe illness or death if he is imprisoned in Peru while he awaits trial.  Instead, it speculates that the State Department might choose to make Dr. Toledo's extradition conditional on Peru's agreement not to detain Dr. Toledo in a Peruvian prison while he awaits trial.  *See* Govt. Opp. at 8.  Again, the government is in the best position to advise the Court of whether the State Department would place conditions on Dr. Toledo's extradition.  Even if the State Department did so, these conditions would be difficult to enforce once Dr. Toledo is in Peru's custody, particularly given Peru's political instability and the very real risk that its democracy will collapse.[3]

The government argues that the rule of noninquiry prohibits this Court from considering the conditions in Peru's prisons.  *See* Govt. Opp. at 8-9.  The rule of noninquiry is not absolute, however. *See Extradition of Smyth*, 61 F.3d 711, 714 (9th Cir. 1995) (citations omitted).  Dr. Toledo is not asking this Court to deny Peru's extradition request; he is merely asking that the Court take into consideration the conditions identified by the State Department.  *See Martinez*, 2014 WL 4446924 at *4 (finding irreparable harm where the requesting country had "overall poor prison conditions as documented by the U.S. State Department").

### III.   Granting a Stay Would Not Harm the United States or the Public Interest

The government argues that the Court should deny the stay because "the United States has a strong interest in having extradition requests submitted by our treaty partners such as Peru resolved without undue delay."  Govt. Opp. at 10.  That might be true in some cases, but here both Peru and

---

[2] available at state.gov/wp-content/uploads/2022/02/313615_Peru_2021-human-rights-report.pdf.
[3] On June 6, 2021, the citizens of Peru narrowly elected Marxist candidate Pedro Castillo, the nation's fourth president in less than 12 months.  In response, Castillo's opponent, right-wing extremist Keiko Fujimori, initiated what the *New York Times* described as "an electoral coup attempt, pushing Peru's democracy to the brink of collapse."  *See* Steven Levitsky & Alberto Vergara, "Trumpian Tactics Threaten to Undo Democracy in Peru," *N.Y. Times*, June 23, 2021, available at https://www.nytimes.com/2021/06/23/peru-election-castillo-fujimori.html.  Castillo's presidency has been "plagued by chaos, resignations and scandals."  *See* Gideon Long, "Peru's Embattled President Picks Third Cabinet in Six Months," *Financial Times*, Feb. 1, 2022, available at https://www.ft.com/content/f76de6b3-48f6-48f37-a0fe-113dd028e.  Castillo has already faced one impeachment vote and is currently under investigation for corruption.  *See* Ali Slimi, "President Pedro Castillo to Face Questioning Over Corruption Allegations," *Foreign Brief: Geopolitical Risk Analysis*, Dec. 14, 2021, available at https://foreignbrief.com/daily-news/president-pedro-castillo-to-face-questioning-over-corruption-allegations/.

the United States have proceeded with a marked lack of urgency.  Peru first sought Dr. Toledo's extradition in February of 2017, but the United States took no action on that request for more than two years.  And Peru has yet to formally charge Dr. Toledo with a crime, even though his alleged offenses purportedly ended in 2012.  In similar situations, courts have concluded that there is no reason to believe that a stay would substantially harm the United States or the public interest.  *See, e.g., Martinez*, 2014 WL 4446924 at *5; *Noriega*, 2008 WL 331394 at *3; *Yoo*, 2021 WL 6100609 at *2; *Nezirovic*, 2014 WL 3058571 at *3.

The government argues that "even if there had been any undue delay," a stay is unwarranted because "failure to comply with foreign nations' proper extradition requests threatens to erode the effective force of the treaties."  Govt. Opp. at 11 (citation and internal quotation omitted).  But that applies only to the failure to comply with "*proper* extradition requests."  There is no public interest in promptly extraditing someone when that extradition is contrary to the terms of the treaty.

## CONCLUSION

Dr. Toledo's appeal presents serious legal questions that have not yet been resolved by the Ninth Circuit.  Failure to grant a stay will cause him irreparable harm while granting a stay will cause minimal harm to the United States.  The Court should stay the extradition pending appeal.

In the even the Court declines to grant a stay pending appeal, Dr. Toledo respectfully requests a brief stay to allow him to seek a stay in the Ninth Circuit.

Dated:      May 19, 2022                       Respectfully submitted,

JODI H. LINKER
Federal Public Defender
Northern District of California

/S
MARA K. GOLDMAN
GRAHAM ARCHER
Assistant Federal Public Defenders