1

2

3

4

5

6

7

8

9

10

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

11

12

13

14

15

16

ALEJANDRO TOLEDO MANRIQUE,

Plaintiff,

v.

DONALD O'KEEFE,

Defendant.

Case No. 21-cv-08395-LB

**ORDER GRANTING TEMPORARY STAY**

Re: ECF No. 21

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

On April 22, 2022, this court denied the petitioner's habeas challenge to his extradition certification.[1] The petitioner, Dr. Alejandro Toledo Manrique, then asked this court for a stay of his extradition pending an appeal and appealed the decision to the Ninth Circuit.[2] The petitioner has not satisfied the standard for obtaining a stay. In particular, he has not shown that he has a likelihood of success on appeal that is sufficient to justify a stay. Therefore, the court denies the

---

[1] Order Denying Writ – ECF No. 17. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents in this case. *Matter of Extradition of Manrique*, 19-mj-71055-MAG-1(TSH) (N.D. Cal.), is the petitioner's underlying extradition proceeding. Citations to docket entries and documents from the petitioner's underlying extradition proceeding are denoted with an "XR." For example, "XR ECF No. 1" refers to the first docket entry in the petitioner's underlying extradition proceeding.

[2] Mot. – ECF No. 21; Notice of Appeal – ECF No. 24.

petitioner's request for a stay. But the court grants the petitioner's unopposed request for a temporary stay so that he may ask the Ninth Circuit for a stay.

## STATEMENT

The petitioner is accused of accepting approximately $35 million in bribes related to the construction of a highway between Brazil and Peru.[3] Peruvian prosecutors charged the petitioner with collusion and money laundering and obtained a warrant for his arrest.[4] In May 2018, Peru requested the petitioner's extradition pursuant to the Peru–U.S. Extradition Treaty and submitted a supplemental extradition request in June 2019.[5] Extradition Treaty Between the United States of America and the Republic of Peru, Peru-U.S., July 26, 2001, T.I.A.S. No. 03-825, S. Treaty Doc. No. 107-6, 2001 WL 1875758 (the Treaty).

In July 2019, the United States filed a complaint seeking the petitioner's arrest.[6] In September 2020, the extradition court denied the petitioner's motion to deny extradition, which was based on his contentions that (1) he had not been "charged" for purposes of the Treaty, (2) Peru had not complied with the Treaty's "charging document" requirement, and (3) the now-dropped influence-peddling charge failed to comply with the Treaty's dual-criminality requirement.[7] In September 2021, the extradition court found that there was probable cause to believe the petitioner committed collusion and money laundering and certified that he was extraditable to Peru on those charges.[8]

The petitioner, who remains on bail, challenged the extradition certification by filing a habeas petition.[9] This court denied the habeas petition.[10] The petitioner has appealed the denial of his

---

[3] Pet. – ECF No. 1 at 8; Opp'n to Pet. – ECF No. 9 at 11–12.

[4] Pet. – ECF No. 1 at 26–27; Arrest Warrant, Ex. K to Pet. – ECF No. 1-11.

[5] Opp'n to Pet. – ECF No. 9 at 12; Ltr. from G. Bonifaz, Embassy of Peru in the U.S., Ex. G to Pet. – ECF No. 1-7.

[6] Compl. – XR ECF No. 1; Compl., Ex. N to Pet. – ECF No. 1-14.

[7] Order – XR ECF No. 147.

[8] Order – XR ECF No. 188.

[9] Pet. – ECF No. 1; Order – XR ECF No. 198; Order – XR ECF No. 203.

[10] Order – ECF No. 17.

United States District Court
Northern District of California

1  habeas petition to the Ninth Circuit and asked the court to stay his extradition pending the Ninth

2  Circuit's decision on his appeal.[11] The parties consented to magistrate-judge jurisdiction under 28

3  U.S.C. § 636.[12]

### ANALYSIS

5  "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v.*

6  *Holder*, 556 U.S. 418, 433 (2009). "It is instead an exercise of judicial discretion, and the

7  propriety of its issue is dependent upon the circumstances of the particular case." *Id.* (cleaned up).

8  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise

9  of that discretion." *Id.* at 433–34.

10  In exercising discretion to grant or deny a stay, courts should consider the following factors:

11  "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the

12  merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of

13  the stay will substantially injure the other parties interested in the proceeding; and (4) where the

14  public interest lies." *Id.* at 434 (cleaned up). The Ninth Circuit has held that courts should apply

15  these factors flexibly when analyzing stay requests. *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th

16  Cir. 2011) (reasoning, in part, that "stays are typically less coercive and less disruptive than are

17  injunctions").

18  To apply the factors flexibly, the court uses a "sliding scale," meaning that the factors are

19  "balanced" so that "a stronger showing of one element may offset a weaker showing of another."

20  *Id.* at 964–66 (quoting in part *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th

21  Cir. 2011)); *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, No. 14-cv-02857-WHO, 2015 WL 674962,

22  at *2 (N.D. Cal. Feb. 17, 2015). "Under this sliding[-]scale approach,

> a moving party who cannot show a strong likelihood of success on the merits may
> nonetheless be entitled to a stay where he shows that his appeal "raises serious
> legal questions, or has a reasonable probability or fair prospect of success." *Leiva–*
> *Perez*, 640 F.3d at 971. A party satisfying this lower threshold under the first *Nken*
> factor is not required to show that it is more likely than not to win on the merits, but

---

[11] Mot. – ECF No. 21; Notice of Appeal – ECF No. 24.

[12] Consents – ECF Nos. 5, 10.

must then demonstrate that the balance of hardships under the second and third factors tilts sharply in its favor.

*Kum Tat*, 2015 WL 674962, at *2 (cleaned up).

In light of this approach, the Ninth Circuit has condensed the four factors from *Nken* and held that a stay of removal is warranted if the petitioner establishes that "irreparable harm is probable and either: (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships tips sharply in the petitioner's favor." *Leiva-Perez*, 640 F.3d at 970.

## 1. Irreparable Harm

In the context of extradition proceedings, the irreparable harm factor is easily satisfied. Several courts have held that a habeas petitioner's impending extradition satisfies the irreparable-harm element. *See, e.g.*, *Luna v. O'Keefe*, No. 17-cv-02129-LHK, 2018 WL 2197555, at *1 (N.D. Cal. May 14, 2018) ("With respect to irreparable harm, Petitioner has satisfied this factor because if the Court denies Petitioner's stay motion and the government extradites Petitioner to Mexico, Petitioner's appeal will become moot and his case will be dismissed.") (citing *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986)); *United States v. Matter of Extradition of Gonzalez*, No. 09-mj-70576-DMR-1, 2015 WL 1409327, at *2 (N.D. Cal. Mar. 27, 2015) (same). The government, however, contends that the petitioner cannot satisfy the irreparable-harm prong based on a categorical rule that would apply to all persons facing extradition.

For example, the government cites *Bowman v. Stafford*, where the court held that the "petitioner must show that the irreparable harm is specific to his case, as opposed to a reason that would apply equally to all others in all cases." No. 20-cv-2250-GPC-MSB, 2022 WL 316684, at *3 (S.D. Cal. Feb. 2, 2022). The *Bowman* court relied on the Supreme Court's decision in *Nken* and the Ninth Circuit's decision in *Leiva-Perez. Id.* But both *Nken* and *Leiva-Perez* involved individuals who were challenging the denial of asylum, not a request for extradition. *Nken*, 556 U.S. at 422; *Leiva-Perez*, 640 F.3d at 963.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

There are good reasons why the need to make a particularized showing of irreparable harm in asylum cases does not apply to extradition proceedings. In asylum proceedings, the potential harm occurs when the asylum-seeker returns to a country where the person may face physical abuse or the inability to return to the United States even if he or she wins on the merits. *Leiva-Perez*, 640 F.3d at 969–70. On the other hand, the harm in extradition proceedings is more closely tied to the extradition itself. *See Liuksila v. Turner*, No. 16-cv-00229 (APM), 2018 WL 6621339, at *1 (D.D.C. Dec. 18, 2018) ("Unlike the petitioner in *Nken*, Petitioner here will not merely have to leave the United States; he will also face prosecution in Finland, and possible loss of liberty, for an offense that might not be extraditable under the U.S.-Finland Extradition Treaty . . . ."); *see also Matter of Extradition of Lang*, 905 F. Supp. 1385, 1391 (C.D. Cal. 1995) ("In the case of these defendants facing extradition, the harm stems from extradition under an unconstitutional statute, whereby the executive branch is able to revise judicial determinations of law.").

Here, the petitioner's potential extradition while his appeal is pending would, alone, satisfy the irreparable-harm standard that other courts in this district have applied. *See Luna*, 2018 WL 2197555, at *1. Furthermore, the petitioner cites his old age, health problems, substandard Peruvian prisons, and political instability.[13] These additional facts are sufficient to demonstrate irreparable harm on grounds that are specific to the petitioner. Accordingly, even under the standard that the *Bowman* court applied, the petitioner has shown that irreparable harm is probable. Thus, the petitioner has satisfied the irreparable harm element of the test for obtaining a stay of his extradition.

### 2. Likelihood of Success on the Merits

Under *Leiva-Perez*, the petitioner must, at a minimum, demonstrate "a substantial case for relief on the merits" to establish grounds for a stay. 640 F.3d at 968 ("Regardless of how one expresses the requirement, the idea is that in order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case for relief on the merits."). This is a minimum

---

[13] Mot. – ECF No. 21 at 12–13; Reply – ECF No. 28 at 5–6.

United States District Court
Northern District of California

1  requirement because the likelihood-of-success prong exists on a sliding scale that depends on the

2  magnitude of the potential for irreparable harm. *Id.* at 964–66; *see also Dunson v. Cordis Corp.*,

3  No. 16-cv-03076-EMC, 2016 WL 10679457, at *2 (N.D. Cal. Nov. 8, 2016) (holding that a "fair

4  prospect of success" does not necessarily satisfy the likelihood-of-success prong because it "does

5  not take into account the sliding scale balancing with the irreparable harm prong") (cleaned up).

6      To satisfy this standard, "a mere possibility of relief" is insufficient, but the petitioner is not

7  required to show that "ultimate success is probable." *Leiva–Perez*, 640 F.3d at 966–67. The

8  petitioner may satisfy the standard by demonstrating that the appeal "raises serious legal

9  questions, or has a reasonable probability or fair prospect of success." *Id.* at 971. For example,

10  courts have found that the standard is met when a petition implicates an area of law that is

11  evolving, because the petition then raises a "serious legal question." *Wei Lin v. Valinken*, No.

12  1:19-cv-01806-EPG-HC, 2020 WL 1274133, at *2 (E.D. Cal. Mar. 17, 2020) (reasoning that the

13  Supreme Court's decision to grant *certiorari* in a case implicating issues relevant to the order

14  sought to be stayed showed that the stay petitioner raised a "serious legal question").

15      The petitioner asserts that his appeal presents a serious legal question because the Ninth

16  Circuit may find that (1) because the Treaty required a charging document, it necessarily required

17  Peru to have formally charged the person sought for extradition, (2) the Treaty required Peru to

18  produce "the formal charging document," or (3) there is no probable cause, either because the

19  admitted evidence failed to establish probable cause or because the extradition court erroneously

20  excluded exculpatory evidence.[14] The petitioner also claims that *Emami v. U.S. Dist. Ct. for N.*

21  *Dist. of Cal.*, 834 F.2d 1444 (9th Cir. 1987) is not controlling.

22      These contentions do not establish a serious legal question. Much of the Ninth Circuit's

23  decision in *Emami* is directly on point and the petitioner has not pointed to any facts that

24  meaningfully distinguish *Emami* from this case. Furthermore, two courts have already ruled

25  against the plaintiff on these issues.

26

27

28  ---
[14] Mot. – ECF No. 21 at 14–15.

This court ruled against the petitioner when deciding the petitioner's habeas petition.[15] While "it would be hubris to pretend that" the Ninth Circuit could not disagree, the order on the petitioner's habeas petition was not particularly close. *Cf. Roe v. SFBSC Mgmt., LLC*, No. 14-cv-03616-LB, 2015 WL 1798926, at *2 (N.D. Cal. Apr. 17, 2015) (granting a stay after acknowledging that the underlying order was close). Furthermore, the extradition court also decided against the petitioner on these issues when ruling on the petitioner's motion to deny extradition.[16] *In re Manrique*, No. 19-mj-71055-MAG-1 (TSH), 2021 WL 8055543, at *19 (N.D. Cal. Sept. 28, 2021) (certifying the petitioner for extradition after evaluating probable cause); *In re Extradition of Manrique*, No. 19-mj-71055-MAG-1 (TSH), 2020 WL 5291903, at *1–5 (N.D. Cal. Sept. 4, 2020). Although it is possible that the Ninth Circuit will disagree with these decisions, the petitioner is required to demonstrate more than a "mere possibility" of relief. *Leiva–Perez*, 640 F.3d at 967 (cleaned up).

The petitioner's arguments that *Emami* does not control are not helpful. In *Emami*, the Ninth Circuit held that the term "charged" as used in the extradition treaty between the United States and Germany was "used as a verb in the generic sense only to indicate 'accused.'" 834 F.2d at 1448 (citing *In re Assarsson*, 635 F.2d 1237, 1242–43 (7th Cir. 1980)). To support this holding, the court noted that all documents that the treaty required the foreign country to submit (which did not include a formal charging document) were before the district court during the extradition hearing. *Id.* at 1448 & n.3. The same reasoning applies here.

For instance, the Treaty uses "charged" in the same way the term was used in the treaty at issue in *Emami*.[17] Treaty, art. I. The Treaty never defines "charged" to mean formally charged and, in fact, Article VI of the Treaty equates the term "charged" with "sought for prosecution."[18] Also, neither the English nor Spanish versions of the Treaty identify a specific charging document by name or reference the *Orden de Enjuiciamiento*, which the petitioner claims is the required

---

[15] Order – ECF No. 17.

[16] Orders – XR ECF Nos. 147 and 188.

[17] Order – ECF No. 17 at 14–15.

[18] *Id.* at 15.

United States District Court
Northern District of California

United States District Court
Northern District of California

charging document.[19] Treaty, art. VI (English); Treaty, art. VI (Spanish), https://www.state.gov/wp-content/uploads/2019/04/03-825-Peru-Extradition-Treaty.pdf. The fact that the Treaty does not identify a specific charging document or documents by name supports the view that the *Emami* decision is controlling.[20]

The petitioner claims that the First Circuit's decision in *Aguasvivas v. Pompeo*, 984 F.3d 1047 (1st Cir. 2021), and the Second Circuit's reasoning in *Sacirbey v. Guccione*, 589 F.3d 52 (2d Cir. 2009), undermine the Ninth Circuit's older decision in *Emami*.[21] There is no basis for this conclusion. In fact, the *Aguasvivas* court stated that "[w]e readily agree with the holdings and the rationale in both *Emami* and *Assarsson*." 984 F.3d at 1060.

In *Aguasvivas*, the government attempted to use a single document to satisfy both a warrant requirement and a charging-document requirement. 984 F.3d at 1058. Here, the government submitted several documents satisfying the charging-document requirement that are separate from the other categories of documents that Article VI of the Treaty requires (*i.e.*, the arrest warrant and supporting evidence).[22] Therefore, the government is not attempting to have a single document perform double duty and there is no reason to believe that the *Aguasvivas* decision raises a serious legal question about the applicability of *Emami* to this case.

The *Sacirbey* decision does not help the petitioner either. In *Sacirbey*, the applicable treaty required "a duly authenticated copy of the warrant of arrest in the country where the crime has been committed" to support extradition. 589 F.3d at 66. The court held that because there was "no evidence of a valid warrant authorizing the arrest of [the petitioner], [he] ha[d] not been charged

---

[19] *Id.* at 15–16; Pet. – ECF No. 1 at 8.

[20] Order – ECF No. 17 at 15–16.

[21] Mot. – ECF No. 21 at 14; Reply – ECF No. 28 at 3.

[22] Prosecutor's Decision No. 6, Ex. D to Pet. – ECF No. 1-4; Prosecutor's Decision No. 8, Ex. L to Pet. – ECF No. 1-12; Arrest Warrant, Ex. K to Pet. – ECF No. 1-11; Opp'n to Pet. – ECF No. 9 at 33 ("To demonstrate probable cause, the government offered, and the extradition court admitted, the *Acusacion Fiscal*, as well as other summaries of the case against Toledo and much of the underlying evidence itself, including the testimony of two key witnesses, Barata and Maiman."); Maiman Dep., Ex. S to Pet. – ECF No. 1-19; Barata Dep., Ex. W to Pet. – ECF No. 1-23.

1   with an extraditable offense pursuant to the terms of the Treaty." *Id.* at 69. The relevant facts in

2   *Sacirbey* were meaningfully different than the facts in this case.

3       The Treaty at issue here requires "a copy of the charging document," but does not identify any

4   specific form that the document must take. In this regard, "the charging document" referenced in

5   the Treaty at issue here is more general than "the warrant of arrest" referenced in the treaty at issue

6   in *Sacirbey*. Furthermore, the government has included Prosecutor's Decision Nos. 6 and 8 with

7   its Extradition Request and the *Acusacion Fiscal* with its Supplemental Extradition Request.[23]

8   Thus, in contrast to the situation in *Sacirbey*, here there is, in fact, evidence that the government

9   has produced the required document.

10      Concerning the petitioner's third basis (lack of probable cause) for establishing a likelihood of

11  success, both this court and the extradition court found that probable cause existed to support the

12  charges against the petitioner.[24] *In re Manrique*, 2021 WL 8055543, at *19 (certifying the

13  petitioner for extradition after evaluating probable cause). Among the evidence is the petitioner's

14  admission that he received at least some bribe money and extensive incriminating testimony from

15  the petitioner's associates.[25] There is no serious question that the evidence reviewed by this court

16  and the extradition court satisfied the slight "any evidence" probable cause standard that applies to

17  extradition proceedings. *Mirchandani v. United States*, 836 F.2d 1223, 1226 (9th Cir. 1988)

18  (cleaned up).

19      In sum, the petitioner has not shown that his appeal raises "serious legal question[ ]" or "has a

20  reasonable probability or fair prospect of success." *Leiva–Perez*, 640 F.3d at 971. Thus, the

21  petitioner has not met his burden to demonstrate a that his appeal has a likelihood of success that

22  is sufficient to support a stay.

23

24

25  ───────────────

    [23] Pet. – ECF No. 1 at 15, 27–28.

26  [24] Order – ECF No. 17 at 22–27; Order – XR ECF No. 188.

27  [25] Pet. – ECF No. 1 at 44 ("Dr. Toledo did receive $500,000 to pay his mortgages, but as Maiman
    testified in 2013, the $500,000 was a loan that Maiman expected Dr. Toledo to repay."); Order – ECF
28  No. 17 at 4–9 (recounting the testimony against the petitioner).

United States District Court
Northern District of California

### 3. Public Interest Factors

In addition to the petitioner's failure to satisfy the minimum likelihood-of-success standard, the public interest factor also weighs against a stay. The third and fourth factors identified in *Nken* (*i.e.*, the effect of the stay on the opposing party and the public interest) merge when the government is the party opposing the stay. *Leiva-Perez*, 640 F.3d at 970 (citing *Nken*, 556 U.S. at 435); *Luna*, 2018 WL 2197555, at *3 ("[T]he two remaining stay factors . . . merge into one 'public interest' factor because the government is the party opposing Petitioner's stay motion . . . ."). In this respect, the Ninth Circuit has held that the public interest is served by "complying with a valid extradition application" because "compliance promotes relations between the two countries, and enhances efforts to establish an international rule of law and order." *Artukovic*, 784 F.2d at 1356. Thus, the public interest factor weighs against staying the petitioner's extradition.

### 4. Temporary Stay

As an alternative to his request for a stay throughout his appeal, the petitioner asked the court for a temporary stay so that he can seek a stay from the Ninth Circuit.[26] The government does not oppose this request.[27]

In cases like this one where the petitioner has established irreparable harm, but has not established a likelihood of success, courts have granted unopposed temporary stays. *See Luna*, 2018 WL 2197555, at *3. Furthermore, there are "conceptual difficult[ies]" when a court must decide whether an appeal of its decision is likely to succeed. *In re Extradition of Hilton*, No. 13-7043-JCB, 2013 WL 3282864, at *2 (D. Mass. June 26, 2013) (cleaned up). Thus, the court grants the petitioner's request for a temporary stay of his extradition so that he may seek a stay from the Ninth Circuit.

Regarding the length of the stay, Ninth Circuit Rule 27-2 provides that "[i]f a district court stays an order or judgment to permit application to the Court of Appeals for a stay pending appeal,

---

[26] Mot. – ECF No. 21 at 17; Reply – ECF No. 28 at 7.

[27] Opp'n – ECF No. 26 at 6.

1    an application for such stay shall be filed in the Court of Appeals within 7 days after issuance of

2    the district court's stay." Accordingly, if the petitioner seeks a stay in the Ninth Circuit within

3    seven days of this order, the court will stay the petitioner's extradition until the Ninth Circuit rules

4    on the petitioner's stay motion.

5                                          **CONCLUSION**

6        The petitioner's request for a stay pending the resolution of his appeal of the order denying his

7    habeas petition is denied, but the petitioner's alternative request for a temporary stay is granted.

8    The petitioner's extradition is hereby stayed for the later of (1) seven days from this order or (2) if

9    the petitioner files a motion to stay with the Ninth Circuit within seven days from this order, the

10   date the Ninth Circuit rules on the petitioner's stay motion.

11

12       **IT IS SO ORDERED.**

13       Dated: June 13, 2022

14                                          _____

15                                          LAUREL BEELER
                                            United States Magistrate Judge
16

17

18

19

20

21

22

23

24

25

26

27

28